# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## WHITELAW'S EX'OR AND ALS. V. WHITELAW.

### MARCH 17th, 1887.

*Absent*—LEWIS, P.

1. PRACTICE AT COMMON LAW—*Province of Jury.*—It is fundamental that, where the evidence is parol, any opinion given to the jury by the court as to the weight, effect and sufficiency of the evidence is an invasion of the province of the jury, and is reversible error. *Cornett* v. *Rhudy*, 80 Va. 710.

2. IDEM—*Address of Court to Jury—Case at Bar.*—Still more is it an invasion of the jury's province where, after the case is submitted, the judge on his own motion reads to the jury an address, based on the idea that the jury is unevenly divided on the issue, expatiating upon the duty of jurors to compromise their views and yield something in deference to the opinion of others, especially when those differing were in the majority in number; and telling them that the burden of proof was on the plaintiffs to the issue ; that, if the evidence was evenly balanced, they should find against the will ; that considering the mass of conflicting evidence in the case, it was not surprising that there should be a difference of opinion; that the very construction of a jury supposes concessions, and that the man who cannot concede is unfit for a juror,·&c., &c., winding up with telling them : "Do your duty, gentlemen, and leave the rest to me."

3. IDEM.—*Province of the court* is to instruct the jury upon questions of law, and to express no opinion, make no comments concerning the facts, whether they are conflicting or not. There can be no particular circumstances which will justify the court in doing either.

Appeal from decree of circuit court of Orange county, rendered at its July term, 1886, in the chancery suit wherein B. R. Whitelaw was plaintiff, and H. A. Sims, exe-

cutor of Mary Whitelaw, deceased, H. A. Sims and Pamelia W., his wife, and H. A. Wiseman and Willie A., his wife, and others were defendants. In this suit there was an issue of *devisavit vel non.* The verdict of the jury was against the will and the court decreed accordingly. The defendants appealed. Opinion states the case.

*John D. Horsley* and *J. G. Field,* for the appellants.

*F. S. Martin* and *A. R. Blakey,* for the appellee.

LACY, J., delivered the opinion of the court.

The cause is as follows : Mary Whitelaw, of said county, executed her will on the eighth day of December, 1874, which was probated on the twenty-second of February, 1875. H. A. Sims, the executor named in the will, qualified as such at that term. The will gave to the son of the testatrix, Benjamin R. Whitelaw, $50. To her daughter, Elizabeth C. Yager, all that portion of her estate which the testatrix should receive from the estate of her son, Isaac D. Whitelaw. To her said daughter, Elizabeth C. Yager, she loaned all the rest of her estate of every kind, both real and personal, during her life, at her death to be equally divided between her grandchildren, Pamelia W. Sims and Willie A. Wiseman, share and share alike, these two being the daughters of the said Elizabeth C. Yager ; and appointed the said H. A. Sims, the husband of the said Pamelia W. Sims, her executor. In July, 1879, the said son, Benjamin R. Whitelaw, filed his bill to set aside the said will, upon the ground that the said testatrix was not mentally capable of making any testamentary disposition of her property at the date of the will, and that the execution of said will was procured unlawfully, by undue and unwarrantable means and influences operating upon an enfeebled and im-

becile mind, employed chiefly by the said H. A. Sims. The son, Benjamin R. Whitelaw, and Elizabeth C. Yager, the daughter, now Mrs. Carpenter, having agreed together to set aside the will, Mrs. Carpenter being at variance with her son-in-law, the said H. A. Sims, an issue was framed, and the case tried, and a verdict rendered against the validity of the will, and the court decreed accordingly. From this decree the appellants, H. A. Sims and others, appealed.

The first error assigned here is that on the day after the argument was closed, and the issue given to the jury for their consideration, the court, upon its own motion, read an address to the jury. This address is apparently based upon the idea that the jury was unevenly divided in sentiment on the issue, and is a lengthy homily upon the duty of jurors to compromise their views, and yield something in deference to the opinion of others, especially when those differing were in the majority in number; that the burden of proof was on the plaintiffs to the issue; if the evidence was evenly balanced, they should find against the will; that, in considering the mass of conflicting evidence in the case, it was not surprising that there should be a difference of opinion, saying : " Under the particular circumstances of this case, you should be disposed to yield something in deference to the opinions of others, *and especially should you do so when those differing from you exceed in numbers,* other things being even ; " that an honest purpose to agree excluded all self-will and obstinacy of purpose ; that the very construction of a jury supposes concessions and the man who cannot concede is unfit for a juror ; " yet a case may arise in which a duty may be *so plain* that concessions cannot properly be made. *But this exists only in plain cases.* It cannot arise in cases in which the weight of conflicting evidence is somewhere about even. Do your duty, gentlemen, and leave the rest to me."

The probable effect of this was perhaps well understood,

as the counsel for the appellants strenuously opposed its being given to the jury, while there seems to have been no objection on the side of the appellees. The court certifies that thirty-six witnesses had been examined, and that there was great conflict of testimony among them, and that on the evening before the morning when this paper was read to the jury one of the jury had stated in open court that he thought there was no probability of their agreeing upon a verdict. However it may be elsewhere, in Virginia the courts have never indulged in the practice of making observations to the jury concerning the evidence. It is considered as encroaching too much upon the province of the jury. The jury, and not the court, are conclusively and uncontrollably the judges, whenever the question depends upon the weight of the testimony. The court responds to questions of law, the jury to questions of fact. The court instructs the jury upon questions of law, but the court cannot instruct the jury as to the weight of evidence, or the sufficiency of proof. The legitimate powers of the jury in this State have been maintained by many decided cases in this court, and the cases all seem to be the same way, and there has been but little difference of opinion among the judges. The cases show that the court must be very careful not to overstep the line which separates law from fact. These cases, from *Ross* v. *Gill*, 1 Wash. 90, down to *Gregory* v. *Baugh*, 2 Leigh, 665, are cited by Mr. Conway Robinson in the first volume of his old Practice, p. 338, and the later cases by Mr. Barton in his Law Practice, p. 214. See, also, the late case of *Cornett* v. *Rhudy*, 80 Va. 710.

But I can find no case which can be said to be exactly like this on this point. It is said by the counsel for the appellants to be unprecedented, and that seems to be so in this State at least. The case of *Dejarnette* v. *Com.*, 75 Va. 877, was a case where the court appears of its own motion to have proceeded to instruct the jury upon the principles

of law by which insanity is to be tested.   Judge Staples in that case says that such was not the practice in Virginia, and says: "We think, however, that the practice in Virginia is a wise one in general; for it is extremely difficult to deliver charges to the jury without conveying to them some intimation of the opinion of the judge upon the evidence, or using some phrase or expression which may constitute a ground of just exception."

In this case the court was not satisfied with charging the jury at great length upon their general duties as jurors, but, in effect, instructs them that the minority should yield to the majority,—that is, concede to the majority something in this particular case; that the evidence was very conflicting, etc.   How much this judge thought the minority must concede to the majority the jury is not informed; but upon what principle could this be held except that the majority should govern, and that the question should be decided by a vote, the voice of the majority being then reported to the court as the unanimous verdict of the jury.   The minority of the jury may thus have been induced to believe that by such a course all responsibility would be removed from them upon their oaths, and placed upon the majority, or possibly upon the court; for the judge loftily concludes, "Do your duty, gentlemen, and leave the rest to me."   We think a verdict thus obtained cannot be said in any just sense to be the verdict of the jury.   The course of the trial judge, we think, was an altogether unwarrantable invasion of the domain of the jury, and, if upheld, would tend to render jury trials a mockery.   It lies at the foundation of jury trials that by their verdict the jury shall determine the issue joined upon their consciences without *outside influence* or *coercion* from the *court or elsewhere.*

The province of the court is to instruct the jury upon questions of law, and express no opinion, make no com-

ments concerning the facts, whether conflicting or not; *there can be no particular circumstances* which will justify the court in doing either. We have found no case in Virginia before this where the jury has been instructed to decide the case *by a ballot,* and this case will doubtless long stand alone. We are of opinion to reverse the decree of the circuit court of Orange in this case for this error. There are many other questions raised here, but it is not thought necessary to pass upon any other question raised.

The case will be remanded for a new trial to be had therein in the circuit court of Orange county.

DECREE REVERSED.