STATE OF MAINE

*vs.*

FREDERICK L. MEANS and FRANK L. GRATTON.

York. Opinion July 20, 1901.

*Jury. Charging on Facts. Evidence. Practice. R. S., c. 82, § 83.*

The presiding justice, in addition to his duty of instructing the jury upon the law, should aid them by re-calling and collating the details of testimony and resolving complicated evidence into its simplest elements.

It is not in violation of the statute, R. S., c. 82, § 83, prohibiting the presiding justice during a jury trial, including the charge, from expressing an opinion upon issues of fact arising in the case, for the justice to state in his charge to the

jury that there is no evidence impeaching the character of a certain witness for virtue or integrity.

It is settled law that the witness' character for truth and veracity only can be impeached. The justice has the right to assume in reference to the character of a witness for virtue and integrity what the law assumes; and his statement is also warranted by the testimony of one of the respondents in the case.

Nor will exceptions lie to remarks of the justice made in the charge, which consist of an analysis of the testimony of a respondent to an indictment, and directing attention to the dubious incidents of his narrative. He can properly instruct the jury to apply to the testimony of witnesses the tests of consistency and probability and aid them in arriving at the truth,—the fact in issue,—by stating both affirmatively and interrogatively the various propositions and incidental questions to be considered and determined by them.

*Held;* that although it is possible that an inference unfavorable to the respondents' testimony could be drawn from the language used in the charge, it is not an expression of opinion within the provision of the statute.

When instructions, bearing upon the issues at the trial, are accompanied with the statement to the jury, "That is for you to judge," "these are considerations for you, I express no opinion," *held;* that this is a disclaimer, by the presiding justice, of any purpose of assuming to determine the facts in issue.

Comments of the presiding justice which are deductions only of truth based upon general experience are not subject to exceptions; nor will a statement of a rule of conduct, so uniform among men as to be proverbial, be regarded as an expression of the individual opinion of the presiding justice.

On exceptions by defendants. Overruled.

Indictment against the defendants for abortion, found at the May term, 1899, York county. The jury returned a verdict of guilty, and the defendants took exceptions to portions of the charge to the jury, which are recited fully in the opinion.

*W. S. Mathews,* county attorney, for state.

*B. F. Hamilton and Geo. F. & Leroy Haley,* for defendants.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, SAVAGE, PEABODY, JJ.

PEABODY, J. The exceptions are to the instructions of the presiding justice contained in eight paragraphs of his charge to the jury, viz:

(1) I am not aware that any insinuation has been thrown out, certainly no evidence introduced impeaching her character for vir-

tue or integrity, or that she has had any improper relations with anybody excepting with Mr. Means, under such circumstances as that occurred.

(2)   Mr. Means says that it was understood between him and Mrs. Marcotte that when he went to Stone's office that he would make the admissions for some purpose or other, and that the fact was not so; but in the presence of Mr. Stone he was to make such admissions and did make them.   Is that a reasonable explanation? Does a man voluntarily confess himself guilty of a serious crime like this, to please anybody, to a third party as in this case?

(3)   It is said that Mrs. Marcotte afterwards wanted the warrant destroyed, and there is evidence of that.   I don't recollect whether she spoke of it or not.   I do not think she denied it. When was that?   Was that at a time when the parties had harmonized, and when, as she says, she expected to be married, and after the agreement at Mr. Stone's office, or not?   If so, it might be pretty apparent, perhaps, why both parties would like to have any evidence of that sort out of the way, if they could, because there was a little scandal connected with it.

(4)   If he was the father of the child, which is the most probable, that she would suggest to go there at the time the criminal court sat, or that he would suggest it?

(5)   He does not explain why it was necessary to deceive Mr. Stone, or why any such transaction, round-about transaction, was reasonable or proper to be done, but he says that was the way.

(6)   Now, the question should arise, if that was the arrangement, and if they felt it was desirable to make such a round-about arrangement as that to give a note and take it up for his mother to sign, and pay money, and then go out on the street and pay it all back again, whether it was necessary for Mr. Means to take it up and get his mother's signature, or all that formality, and why it was necessary, if that was the fact, to have another note made and stamped?   Is that a reasonable and truthful story?   You will judge of that.

(7) You come to the January term, 1899, and you find Mrs. Marcotte up to Haverhill. Mr. Means seems to know about it, according to his testimony all through; and that visit happens to be, according to the testimony, at a time when the Grand Jury was in session.

(8) Innocent men, men conscious of innocency, do not have much occasion to fear a Grand Jury: and it is rather unusual, I think you will say in your own experience, that men who are conscious of having committed no offense either to fear an indictment, or to undertake to get out of the jurisdiction when a Grand Jury is sitting.

It is claimed by the respondents, that these instructions are in violation of the statute R. S., c. 82, § 83, prohibiting the presiding justice during a jury trial, including the charge, from expressing an opinion upon issues of fact arising in the case.

The first exception is to the language of the presiding justice indicating that there is no evidence impeaching the character of Mrs. Marcotte for virtue or integrity; and the complaint is that this language assumes that her character could not be impeached. Cases are cited which sustain the rule that, as she was simply a witness in the case, her character for truth and veracity only could be impeached.

The justice had the right to assume in reference to her character what the law assumed, and his statement was warranted also by the testimony of the respondent Means himself.

All that the respondents could require was, that the jury should consider her interest and her feeling as detracting from the credibility of her testimony, and as the instruction on that point was explicit, they were not prejudiced.

We can discover no grounds of exception in the third specification.

The fourth, fifth and sixth exceptions are to the remarks of the justice in his analysis of the testimony of Means and directing attention to the dubious incidents of his narrative.

He could properly instruct the jury to apply to the testimony of witnesses the tests of consistency and probability and aid them in

arriving at the truth,—the fact in issue,—by stating both affirmatively and interrogatively the various propositions and incidental questions to be considered and determined by them.

It is possible that an inference unfavorable to the testimony of Means could be drawn from the language used, but it is not an expression of opinion within the provision of the statute. *McLellan* v. *Wheeler,* 70 Maine, 285 ; *State* v. *Day,* 79 Maine, 120.

The instructions complained of in the second, seventh and eighth exceptions, if limited to the words quoted, bear upon the issue between the State and the respondent Means, but the justice disclaimed any purpose of assuming to determine the facts by stating to the jury in the same connection, " That is for you to judge." " These are considerations for you, I express no opinion."

No allusion to the admitted confession of Means to Mr. Stone, the subject of the second exception, could be made by the presiding justice without involving a possible inference of his opinion as to the guilt of that respondent. But his comments were deductions of truth based upon general experience.

And the same construction applies to the seventh and eighth paragraphs excepted to, which together constitute one ground of exception. The language complained of is the statement of a rule of conduct so uniform among men as to be proverbial, and was not an expression of the individual opinion of the justice. *McLellan* v. *Wheeler,* supra ; *State* v *Richards,* 85 Maine, 252.

It would be impossible for the presiding justice to rule or charge the jury upon matters of law independently of the environment of fact.

When the constitution of Maine was adopted, trial by jury was preserved, and is substantially what it was by the common law. The common-law jury trial and our constitutional jury trial imply the presence and participation of the judge and the jury. The questions of law which are to be determined by the court, and the questions of fact which are to be determined by the jury, shade into each other, and the line of separation may sometimes be obscure.

The presiding justice in addition to his duty of instructing the

jury upon the law, should aid them by re-calling and collating the details of testimony and resolving complicated evidence into its simplest elements. He is empowered to instruct them on the law and to advise them on the facts. *Capital Traction Co.* v. *Hof*, 174 U. S. 1; *Nudd* v. *Burrows, Assignee*, 91 U. S. 426.

Lord Hale in his History of the Common Law says relative to trial by jury: "It has the advantage of the judge's observation, attention and assistance in point of law by way of deciding, and in point of fact by way of direction to the jury." 2 Hale His. Com. Law, (5th Ed.) 147, 156.

*Exceptions overruled.*