## LORANGER *v.* JAGEMAN.

TRIAL—CONDUCT OF COURT—IMPARTIALITY OF JUDGE—BIAS.
  Where comments of the trial judge, made before the jury, tended to show the court's want of belief in statements of a witness for the defense, defendant was denied a fair trial, and a judgment for plaintiff is reversed.

Error to Wayne; Donovan, J. Submitted January 17, 1912. (Docket No. 102.) Decided March 12, 1912.

Trover by Joseph Loranger against Florenz J. Jageman for the conversion of a certificate of corporate stock. Judgment for plaintiff. Defendant brings error. Reversed.

*B. J. Lincoln*, for appellant.

*Charles E. Duffy*, for appellee.

MOORE, C. J.    This case is an action in trover for the conversion of one certificate representing 100 shares of the stock of the Star Varnish Works, a corporation, of the face value of $1,000.    The case was tried before a jury in the Wayne circuit court, and plaintiff had verdict and judgment in the sum of $1,095.83.    The case is in this court by writ of error.

There are many assignments of error.    We think it unnecessary to discuss many of them.    The trial judge evidently reached the impression early in the case that plaintiff had a meritorious case, and that the defense which was interposed was without merit.    This impression apparently remained with him all through the trial and affected his charge to the jury.    His attitude is indicated by the following extract from the record.    Mr. Jageman was under examination as a witness:

"*Q.* I ask you again, Mr. Jageman, what in your opinion as the general manager of that company, and being familiar with the business, what the fair reasonable value of the fixtures on hand May 17th was?    (Objected to; lack of foundation.)

"*The Court:* We have got him on record one way; let him go on the other.

"*A.* On that day I should judge it would be worth about $2,000.

"*Q.* On that same day, in your opinion, what was the value of the real estate?    (Objected to for the same reason.)

"*The Court:* He is on record one way; let him go on the other, if he wants to.

"*Mr. Lincoln:* Note an exception.

"*A.* I should think about $4,000.

"*Q.* I will ask you what, in your opinion, was the value of the outstanding accounts due the company from your examination of the books?

"*A.* I should judge they were about $5,800 at that time.    The liabilities of the company on May 17, 1909, were as follows:    Due on land contract, about $330; due

to banks, $400; and due to merchandise on one account, about $950—that is, on one account, $1,550.

"*Q.* What were the total net assets as you have just stated? (Objected to.)

"*A.* I am not giving it exact, but to be about $16,000.

"*The Court:* Since January 1st last, three months or more, you have dropped down from $40,870 to $16,000; that is a little more than a third. Have you had any big fire?

"*A.* No, sir.

"*The Court:* You have dropped down to that?

"*A.* Yes, sir.

"*The Court:* Do you want me to leave a case to the jury where you vary as much as that?

"*Mr. Lincoln:* I would like to have an exception.

"*The Court:* I would like to put him on record in the State of Michigan. I think he should be put upon record, a man who will vary like that; you may take it up, but we have to have a little regard for the truth.

"*Mr. Lincoln:* I have an exception to that.

"*The Court:* Yes; take it up on that. Get to the end of the case; that is all I ask of you."

We cannot escape the conclusion that the questions of fact were not allowed to go to the jury free from the opinion of the trial judge in relation to them, and that defendant did not have a fair and impartial trial. It is not necessary to discuss the other assignments of error, for the reason that upon a new trial they are not likely to again arise.

Judgment is reversed, and a new trial ordered.

STEERE, MCALVAY, BROOKE, BLAIR, STONE, and OSTRANDER, JJ., concurred. BIRD, J., did not sit.