(No. 20945.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM J. KELLY, Plaintiff in Error.

*Opinion filed December 17, 1931—Rehearing denied Feb. 3, 1932.*

222

DeYoung and Dunn, JJ., dissenting.

Benjamin C. Bachrach, and Michael J. Ahern, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, and J. J. Neiger, (Edward E. Wilson, Grenville Beardsley, Stephen A. Thieda, and Edgar Bronson Tolman, of counsel,) for the People.

Mr. Justice Orr delivered the opinion of the court:

By a jury verdict in the criminal court of Cook county William J. Kelly was found guilty of larceny of an automobile and sentenced to the penitentiary. This writ of error has been sued out to reverse the judgment because the trial judge, in his charge to the jury, commented on the evidence and orally instructed the jury as to the law in

the case, contrary to sections 72 and 73, respectively, of the Practice act. (Cahill's Stat. 1929, chap. 110.)

This court has repeatedly held that it is beyond the province of a trial judge to express his opinion on the weight of the evidence or comment on the facts. This principle has been enunciated in an unbroken line of decisions of this court beginning with the case of *Bill* v. *People,* 14 Ill. 432, decided in 1853. The provision that the court shall instruct only as to the law of the case first appeared in our statutes in 1827 and has existed in substantially its present form for over a century. In construing this provision we have repeatedly held it to be error for the trial judge to even assume or intimate in instructions to the jury what the evidence is upon any controverted question. It is error even to instruct the jury as to the law in a one-sided or partial manner. (*Chambers* v. *People,* 105 Ill. 409; *People* v. *Celmars,* 332 id. 113, and many cases cited.) Likewise we have often held that an oral instruction on the law of the case, contrary to section 73 of the Practice act, is reversible error. (*Ellis* v. *People,* 159 Ill. 337; *People* v. *Grandstaff,* 324 id. 70.) The fact that the statutes in question have been construed and applied for a considerable period of time does not necessarily render them free from constitutional attack. However, in *Neiberger* v. *McCullough,* 253 Ill. 312, Mr. Justice Cartwright in delivering the opinion of the court said: "It is true that where a constitutional provision is doubtful and there is need of interpretation, the practical exposition of it by departments of government called upon to act under it, acquiesced in by the people, especially for a considerable period of time, raises a strong presumption that it is correct and will generally be adopted by the courts.—*Nye* v. *Foreman,* 215 Ill. 285; *People* v. *Olson,* 245 id. 288; *Cook County* v. *Healy,* 222 id. 310."

In behalf of the People, however, it is urged that sections 72 and 73 of the Practice act are unconstitutional be-

cause they are in conflict with section 5 of article 2 of the constitution of this State, which guarantees that "the right of trial by jury as heretofore enjoyed shall remain inviolate." It is claimed that the statutes in question destroy two essential attributes of the English common law trial by jury, namely, the right of a judge to advise the jury on the facts and to instruct them orally on the law.

Section 6 of article 8 of the constitution of 1818 provided "that the right of the trial by jury shall remain inviolate;" section 6 of article 13 of the constitution of 1848 provided "that the right of trial by jury shall remain inviolate;" and section 5 of article 2 of the constitution of 1870 provides that "the right of trial by jury as heretofore enjoyed shall remain inviolate." The same right was guaranteed by each successive constitution. The words "as heretofore enjoyed," in the constitution of 1870, refer both to the provisions of the constitutions of 1848 and 1818, and is the right as it existed at common law and as it was enjoyed at the adoption of the respective constitutions, unmodified by any statutory changes of procedure. *People v. Bruner,* 343 Ill. 146; *Liska* v. *Chicago Railways Co.* 318 id. 570; *Sinopoli* v. *Chicago Railways Co.* 316 id. 609.

It is well settled that the object of a constitutional provision guaranteeing the right of a trial by a jury is to preserve the substance of the right rather than to prescribe the details of the methods by which it shall be exercised and enjoyed. The right of trial by jury secured in England by magna charta and in this country by the Federal and State constitutions has always been regarded as the great safeguard of personal liberty and has been jealously guarded by the courts. The provision of our constitution that the right of trial by jury as heretofore enjoyed shall remain inviolate means that all substantial incidents and consequences which pertain to the right of trial by jury at common law are beyond the reach of hostile legislation and are preserved in their substantial extent as they existed at common law.

The cardinal principle is that the essential features of trial by jury as known to the common law must be preserved and its benefits secured to all entitled to the right. (*People* v. *Powell*, 87 Cal. 348, 25 Pac. 481; *State* v. *Withrow*, 133 Mo. 500, 34 S. W. 245.) Thus, in *Walker* v. *Southern Pacific Railroad Co.* 165 U. S. 593, 41 L. ed. 837, Justice Brewer, considering whether a statute of the Territory of New Mexico violated the provisions of the United States constitution on this subject, said: "The question is whether this act of the Territorial legislature in substance impairs the right of trial by jury. * * * Its [the seventh amendment] aim is not to preserve mere matters of form and procedure but substance of right. This requires that questions of fact in common law actions shall be settled by a jury, and that the court shall not assume, directly or indirectly, to take from the jury or to itself such prerogative. So long as this substance of right is preserved, the procedure by which this result shall be reached is wholly within the discretion of the legislature." To the same effect Prof. Austin W. Scott, in his treatise on "Trial by Jury and the Reform of Civil Procedure," (31 Harvard L. R. 669,) observed: "Only those incidents which are regarded as fundamental—as inherent in and of the essence of the system of trial by jury—are placed beyond the reach of the legislature. The question of the constitutionality of any particular modification of the law as to trial by jury resolves itself into a question of what requirements are fundamental and what are unessential—a question which is necessarily, in the last analysis, one of degree." And in 35 Corpus Juris, on page 225, it is stated: "Denial of any one of the essential elements or incidents of a jury trial is a denial of the right to that mode of trial. On the other hand, it is competent for the legislature to make any reasonable regulations and conditions as to how the right shall be exercised so long as it is not denied or materially impaired." Numerous decisions of State courts uphold this

doctrine. In New York, where a constitutional provision similar to ours provided that "the trial by jury in all cases in which it has been heretofore used shall remain inviolate forever," it was held that its object was to preserve the substance of the right rather than prescribe the method by which it should be exercised. (*Smith* v. *Western Pacific Railway Co.* 203 N. Y. 499, 96 N. E. 1106.) In Pennsylvania it was held that the great purpose of the constitution in providing that "trial by jury shall be as heretofore and the rights thereof remain inviolate" was primarily to protect and secure the right as a protection from innovations which might destroy its utility, but beyond this point there is no limitation on legislative power in constructing modes of redress for civil wrongs and regulating their provisions. (*Haines* v. *Levin*, 51 Pa. 412.) In California it was held that the word "inviolate," as used in their bill of rights, connotes no more than freedom from substantial impairment. (*People* v. *Peete*, 202 Pac. 51.) And in Ohio it has been held that even though the mode of obtaining a jury trial may be somewhat more inconvenient than it was at the time of the adoption of the constitution, discretion must be allowed to the legislature, which must be so far abused as clearly to violate the substantive right before the act will be declared unconstitutional. (*Norton* v. *McLeary*, 8 Ohio St. 205.) This same principle is expressed in the decisions of the courts of many other States where the legislatures are empowered to make any reasonable regulation or condition respecting the mode of enjoying the right of jury trial so long as the essential incidents of the right are not substantially impaired. *Humphrey* v. *Eakeley*, 72 N. J. L. 424, 60 Atl. 1097; *People* v. *Harding*, 53 Mich. 46, 18 N. W. 555.

We are thus brought to consider whether the provisions of sections 72 and 73 of the Practice act impair any of the substantial rights or elements of a jury trial as constituted at common law. While the right to a jury trial, rather

than the method or procedure, is guaranteed, the constitution does not define what that trial is. In *People* v. *Dunn*, 157 N. Y. 528, 52 N. E. 572, the fundamental elements of a trial by a jury under the common law and preserved by their constitution are stated in the following language: "It is to be observed that our constitution does not secure to the defendant any particular mode of jury trial nor any particular method of jury selection. * * * The right was conceded to the citizen of having the judgment of an impartial committee or body of his fellow-citizens upon charges involving his life or his liberty or his property, and two elements became essential ingredients of the right, viz., that the jurors should be twelve in number and that they should be capable of deciding the cause fairly and impartially." In *Lommen* v. *Minneapolis, etc. Co.* 65 Minn. 196, 68 N. W. 53, the Supreme Court of Minnesota says: "The essential and substantive attributes or elements of jury trial are, and always have been, number, impartiality and unanimity." The three essentials of a jury at common law are, that it should be composed of twelve men, that they should be impartial and that their verdict should be unanimous. (16 R. C. L. p. 221, and many cases cited in foot note.) Blackstone, by different nomenclature, has recognized the same three constituent elements composing the common law right of trial by jury in the following language: "The truth of every accusation, whether preferred in the shape of indictment, information or appeal, should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbors, indifferently chosen and superior to all suspicion." 4 Blackstone's Com. 349.

The essential attributes of the right of trial by jury guaranteed by the constitution of Illinois have been enumerated in prior decisions of this court. In *George* v. *People*, 167 Ill. 447, it was said that the words "the right of trial by jury as heretofore enjoyed," meant, under the

common law of England, certain specified things which can not be dispensed with or disregarded on the trial of a person charged with a felony. These requirements were: "A jury of twelve men must be empaneled, and any less number would not be a common law jury. The jury must be indifferent between the prisoner and the people. They must be summoned from the vicinage or body of the county in which the crime was alleged to have been committed. The jury must unanimously concur in the verdict. (This latter is one of the old requirements of the common law.) The final decision upon the facts is to rest with the jury, and the court cannot interfere to coerce them to agree upon a verdict against their convictions.—Cooley's Const. Lim. 394." In *Sinopoli* v. *Chicago Railways Co. supra,* this court again defined the essential ingredients comprised in the right of trial by jury in the following language: "The essential thing in the right of trial by jury is the right to have the facts in controversy determined under the direction and superintendence of a judge by twelve impartial jurors having the qualifications and selected in the manner required by law, whose verdict must be unanimous and shall be conclusive, subject to the right of the judge to set it aside if in his opinion it is against the law or the evidence and to grant a new trial." Later, in *Liska* v. *Chicago Railways Co. supra,* we adopted the definition of the right of trial by jury in substantially the same language as was used in the *Sinopoli case* above quoted from.

Thus it is seen that in successive decisions this court has not included the right of the judge to comment on the evidence nor to express an opinion on its weight as an essential element of the right of trial by jury referred to by section 5 of article 2 of the constitution. That this right was not one of the essential elements of the right of trial by jury which the framers of the constitution intended to render free from legislative control is not only indicated by the decisions above cited and quoted from, but also by the

fact that in a large majority of our States the trial judge, either by constitutional provision, statute or judicial decision, is prohibited from commenting on the evidence. (*Neill v. Rogers Bros. Produce Co.* 38 W. Va. 228; *American Express Co. v. Chandler,* 231 S. W. (Tex.) 1085; *Lester v. State,* 37 Fla. 382; *City of Minneapolis v. Canterbury,* 122 Minn. 301, 142 N. W. 812; *State v. Smith,* 53 Mo. 267; *Whitelaw v. Whitelaw,* 83 Va. 40, 1 S. E. 407; *Bank v. McArthur,* 168 N. C. 48, 84 S. E. 39; *Metropolitan Life Ins. Co. v. Howle,* 68 Ohio St. 614; *Loranger v. Jageman,* 169 Mich. 84, 134 N. W. 967; *Fager v. State,* 22 Neb. 332, 35 N. W. 195.) Contrary Federal authorities have been cited but are not applicable because the trial by jury secured by the seventh amendment to the Federal constitution relates only to the courts of the United States, (*Bothwell v. Boston Elevated Railroad Co.* 215 Mass. 467, 102 N. E. 665; *Walker v. Sauvinet,* 92 U. S. 90, 23 L. ed. 678;) and the States, so far as the seventh amendment to the Federal constitution is concerned, are left to regulate trials in their own courts in their own way. *Pearson v. Yewdall,* 95 U. S. 294, 24 L. ed. 436; *Cook v. United States,* 138 U. S. 157.

Section 5 of article 2 of the constitution was not intended to render unchangeable every characteristic and detail of the common law system, but secured only such fundamental and essential elements of trial by jury as were necessary to secure and protect the liberties and rights of the individual. It is generally conceded that the framers of the constitution were intent upon preserving the rights of trial by jury primarily for the protection of the accused. (*People v. Fisher,* 340 Ill. 250.) It was uniformly regarded as a valuable provision bestowed upon the person accused of crime for the purpose of safeguarding him against the oppressive power of the king and the arbitrary or partial judgment of the court. (*Patton v. United States,* 281 U. S. 276.) Judge Story, speaking of trial by

jury in criminal cases, referred to it as a great privilege, brought by our ancestors to America "as a part of that admirable common law which had fenced round and interposed barriers on every side against the approaches of arbitrary power. (2 Story on the Constitution, sec. 1779.) As a protection against arbitrary power, for the benefit of the accused, it would be illogical to contend that such a privilege included as one of its essentials any authority to the trial judge to place his own interpretation on the weight of the evidence and thus invade the exclusive function of the jury as judges of the fact. If the right to have the trial judge express an opinion on the weight of the evidence and make comments upon it to the jury was an essential ingredient of a common law jury trial it necessarily had to be something which the defendant not only wanted but could demand. If it were not something which the defendant could secure upon demand it was not one of his rights. A reference to the English cases shows conclusively that the exercise of this judicial power by the common law trial judges was entirely discretionary. In *Smith* v. *Carrington*, 4 Cranch, (U. S.) 62, Chief Justice Marshall said: "There can be no doubt of the right of a party to require the opinion of the court on any point of law which is pertinent to the issue nor that the refusal of the court to give such opinion furnishes cause for an exception, but it is equally clear that the court cannot be required to give to the jury an opinion on the truth of testimony in any case." In *Parimeter* v. *Coupland*, 6 M. & W. (Eng.) 106, Parke, B., said: "The judge, as a matter of advice to them in deciding that question, might have given his own opinion as to the nature of the publication but was not bound to do so as a matter of law." In *State* v. *Bissonnette*, 83 Conn. 261, 76 Atl. 288, Justice Thayer stated: "The sixth was a request that the court should instruct the jury that certain facts should have great weight with them. The court might, in its discretion, comment on the weight of the testimony but it was

not bound to do so, and the weight to be given to it was for the jury. It was not error to refuse the request.—*State v. Smith,* 49 Conn. 376, 387."

In view of these early decisions it is apparent that the practice of common law trial judges in expressing an opinion on the facts was not an essential right guaranteed by the constitution to the people but was simply a privilege of the trial judge by which he might comment or refuse to comment on the facts, at his own discretion. It was essentially an English practice and was not universally adopted in our thirteen original States. This lack of unanimity is evidenced by early statutes adopted in many States restricting and prohibiting any comments on the evidence by the trial judge. It must be borne in mind that in 1818, when our first constitution was adopted in this State, the practice and procedure in the courts of this country had already undergone many changes. Over a century of isolation from the mother country had served to bring about a distinctive colonial procedure. Over one hundred years ago (1827) the Illinois legislature passed the law requiring the judge to confine his instructions to the jury solely upon the law of the case, and its action can now only be interpreted as a contemporaneous construction of the constitution, which had been adopted nine years earlier. It is a principle of construction of the constitution that it is proper to take into consideration uniform, continued and contemporaneous construction given by the legislature, and generally recognized, as to its meaning and intention, and that such contemporaneous construction affords a strong presumption that it rightly interprets the meaning and intention. (*Boehm* v. *Hertz,* 182 Ill. 154; *Myers* v. *United States,* 272 U. S. 52.) The usual case in which the rule of contemporaneous and practical construction is applied is one in which the constitutional provision is somewhat ambiguous and the validity of the statute in question is favored. (*People* v. *Bruner, supra.*) Chief Justice Marshall in *Cohens* v. *Virginia,*

6 Wheat. 264, said: "This concurrence of statesmen, of legislators and of judges in the same construction of the constitution may justly inspire some confidence in that construction." Mr. Chief Justice Taft in *Myers* v. *United States, supra,* said: "This court has repeatedly laid down the principle that a contemporaneous legislative exposition of the constitution, when the founders of our government and framers of our constitution were actively participating in public affairs, acquiesced in for a long term of years, fixes the construction to be given its provisions."

In some of the authorities cited by the People in support of the doctrine that at common law the judge could advise the jury on the facts, we find a common expression that the issues of fact were to be determined "under the direction and superintendence of a judge." This phrase has been interpreted and extended in some jurisdictions to mean that a judge might, if he so desired, make comments on the evidence or advise the jury on the facts. But in Illinois, where the conflicting decisions on this subject were reviewed, this court in *Sinopoli* v. *Chicago Railways Co. supra,* mentioned the same phrase but failed to give it any such extended or important meaning. In summarizing the essential requirements of the right of trial by jury in that case this court held them to be: (1) Twelve, (2) impartial, (3) qualified jurors, who should (4) unanimously decide the facts in controversy (5) under the direction and superintendence of a judge. These were the common attributes of a jury trial not only as it existed when our first constitution was adopted but as it exists to-day in this State. No definition of the phrase "under the direction and superintendence of a judge" has been found in any of the decisions. Suffice it to say that these words carry no enlarged or hidden power or meaning. "Direction" refers primarily to the duties to be performed by the trial judge in guiding the jury by instructing them on matters of law, only, leaving to the jury the exclusive function of deter-

mining all matters of fact without any suggestion or comment by the judge. "Superintendence" refers to the other general duties to be performed by the trial judge in conducting and controlling the trial in conformity with the established rules of court and according to the laws regulating its practice and procedure.

It is further contended by the People that the judiciary is the sole depository of judicial powers; that these powers cannot be abrogated or interfered with, nor can their manner of exercise at all be determined by the General Assembly. This court has never sanctioned such a literal application of the theory of "separation of powers." We have never suggested a test or criterion to be used in any given case for determining the exact boundary between judicial and legislative powers, within the meaning of the constitution, for the good reason that the constitution does not itself define judicial powers. In the cases relied upon (*People* v. *Fisher, supra, Franklin* v. *Westfall,* 273 Ill. 402, and *People* v. *Olson, supra,*) this court stated the general doctrine that the inherent judicial functions are beyond legislative control. This rule was reiterated by us in *People* v. *Bruner, supra,* where it was held that adjudicating the law applicable to the facts in a particular case is inherently a judicial function. That the legislature may enact general laws governing proceedings and practice is recognized in the constitution of 1870. Section 22 of article 4 provides: "The General Assembly shall not pass local or special laws in any of the following enumerated cases, that is to say: For * * * regulating the practice in courts of justice. * * * In all other cases where a general law can be made applicable, no special laws shall be enacted." Under the general provision of the constitution pertaining to the judicial department (section 29 of article 6) we also find the following significant provision: "All laws relating to courts shall be general, and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all

courts, of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be uniform." The construction of the two sections of the constitution above quoted and the power of the legislature to enact general laws pertaining to court procedure was considered by this court in *Jensen* v. *Fricke,* 133 Ill. 171. There the question arose whether an act of the legislature entitled, "An act to expedite the trial of certain suits at law in courts of record," approved June 1, 1889, was contrary to the general Practice act of this State and whether it also amounted to special legislation and was in conflict with both sections of the constitution above mentioned. This court there held the act constitutional, since it was uniform in operation and not special legislation, saying: "All these matters, when regulated by general law applicable alike to all persons and causes similarly situated, are within the legislative discretion and control." In *Witter* v. *Cook County Comrs.* 256 Ill. 616, where it became necessary for this court to decide whether the legislature had unlawfully infringed upon the inherent power of the courts to control the judicial department of government in the selection of probation officers, Mr. Justice Cartwright, speaking for the court, said: "The three departments aid in the administration of the government, each one performing its different functions, and article 3 does not mean that the legislative, executive and judicial powers shall be kept so entirely separate and distinct as to have no connection with or dependence upon each other.—*Field* v. *People,* 2 Scam. 79." Again, in *People* v. *White,* 334 Ill. 465, this same principle was recognized in the following language: "The line of demarcation between the various departments of government is not distinct and cannot be clearly and distinctly drawn. Nor can the various departments of government operate entirely distinct from and without connection or dependence upon each other. There are certain powers of government which indubitaby

belong to certain of the departments provided by the constitution, such as the right to grant pardons or veto an act of the legislature, which belongs to the executive department, the right to make laws, which belongs to the legislative, and the right to construe laws and adjust controversies between citizens, which belongs to the judicial department. There are many other powers which may properly be assigned to one or the other of two departments. This is recognized in article 3 of the constitution, which provides: "The powers of the government of this State are divided into three distinct departments, the legislative, executive and judicial; and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted.' This is the declaration of a fundamental principle, and, though of vital importance, is to be understood as the broad, theoretical line of demarcation between the great departments of government. This court, however, is not, when considering a question as to the extent of the powers of either of these departments, to confine its views to this general article, which confers no specific powers."

From what we have said above it must be apparent that section 72 of the Practice act, which is general in character and uniform in its operation throughout the State, was a proper subject of legislative enactment under the authority of section 22 of article 4 and section 29 of article 6 of the constitution. The limitation on the legislature is that it shall not encroach upon the inherent powers of the judiciary, and no such encroachment is found in the provisions of section 72.

What we have said above with particular reference to section 72 of the Practice act may be applied generally to the provisions of sections 73, 74 and 75 of the same act. Section 73, requiring the trial judge to give his instructions to the jury in writing, does not violate section 5 of article 2 of the constitution. This section, and its re-

lated sections 74 and 75, obviously relate only to the form, and not to the substance, of the right of trial by jury. There is no impairment of an essential ingredient of trial by jury involved in this regulation. The legislature may make any reasonable regulation or condition respecting the mode or method of enjoying the right of trial by jury so long as it does not substantially impair the right itself.

We are therefore of the opinion that sections 72, 73, 74 and 75 are not violative of the constitutional guaranty of the right of trial by jury, and that the trial court erred in disregarding these statutory provisions by commenting upon the evidence and giving oral instructions to the jury.

The judgment of the criminal court of Cook county is therefore reversed and the cause remanded.

*Reversed and remanded.*

Mr. JUSTICE DeYOUNG, dissenting:

By the opinion filed the majority of the court declares that section 72 of the Practice act which limits the trial court's instructions, in charging the jury, to the law of the case and section 73 of the same act which requires all instructions to the jury in any case, civil or criminal, to be reduced to writing, do not deprive trial by jury at common law of any of its essential elements; that these statutes merely effected changes of detail outside of the scope of the constitutional guaranty that the right of trial by jury shall remain inviolate, and that these statutory changes are not encroachments upon the judicial department but are valid enactments within the competency of the legislative power. It appears to me that these conclusions are unsound and that the court's judgment is erroneous.

The opinion concedes that the constitutions of 1818 and 1848 successively guaranteed and that the present constitution guarantees the right of trial by jury "as it existed at common law and as it was enjoyed at the adoption of the respective constitutions, unmodified by any statutory

changes of procedure." (*People* v. *Bruner,* 343 Ill. 146; *Liska* v. *Chicago Railways Co.* 318 id. 570; *Sinopoli* v. *Chicago Railways Co.* 316 id. 609; *George* v. *People,* 167 id. 447). Trial by jury at common law included as an essential attribute the right of the judge to comment on the evidence and to express his opinion on the facts, provided he made it clear to the jury that they were not bound by the expression of his opinion but that all questions of fact were to be freely decided by them. (Hale's History of the Common Law of England, (4th ed. 1792,) p. 291; 3 Blackstone's Commentaries on the Laws of England, (Wendell's ed. 1847,) p. 374; 3 Chitty's Practice, (1st Am. ed. 1836,) p. 913; *Petty* v. *Anderson,* 3 Bing. 170, 171-173; *Solarte* v. *Melville,* 14 E. C. L. 196, 198; *Belcher* v. *Prittie,* 4 Moore & Scott, 295, 302, 303; *Davidson* v. *Stanley,* 3 Scott's New Reps. 49, 51, 52; *Darby* v. *Ouseley,* 1 H. & N. 1, 3, 13; *Taylor* v. *Ashton,* 11 M. & W. 401, 417; *Sutton* v. *Sadler,* 91 E. C. L. 86, 99, 104; *Lowenburg, Harris & Co.* v. *Wolley,* 25 Can. S. C. 51, 55; *Nudd* v. *Burrows,* 91 U. S. 426, 439; *St. Louis, Iron Mountain and Southern Railway* v. *Vickers,* 122 U. S. 360; *United States* v. *Philadelphia and Reading Railroad Co.* 123 U. S. 113, 114, 116; *Lincoln* v. *Power,* 151 U. S. 436, 442; *Herron* v. *Southern Pacific Co.* 283 U. S. 91; *New York Firemen Ins. Co.* v. *Walden,* 12 Johns. 513, 519; *State* v. *Hummer,* 73 N. J. L. 714, 719; *State* v. *Means,* 95 Me. 364, 368, 369; *Allard* v. *LaPlain,* 125 Me. 44, 45; *Hamilton* v. *People,* 29 Mich. 173, 192; *Jessner* v. *State,* 202 Wis. 184, 191). The Federal Supreme Court, in *Vicksburg and Meridian Railroad Co.* v. *Putnam,* 118 U. S. 545, at page 553, said: "In the courts of the United States, as in those of England, from which our practice was derived, the judge, in submitting a case to the jury, may, at his discretion, whenever he thinks it necessary to assist them in arriving at a just conclusion, comment upon the evidence, call their attention to parts of it which he thinks important, and express his

opinion upon the facts; and the expression of such an opinion, when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the determination of the jury, cannot be reviewed on writ of error." Likewise, *Capital Traction Co.* v. *Hof,* 174 U. S. 1, 13, 14, is to the same effect. The Supreme Court there said: " 'Trial by jury,' in the primary and usual sense of the term at the common law and in the American constitutions, is not merely a trial by a jury of twelve men before an officer vested with authority to cause them to be summoned and empaneled, to administer oaths to them and to the constable in charge, and to enter judgment and issue execution on their verdict; but it is a trial by a jury of twelve men, in the presence and under the superintendence of a judge empowered to instruct them on the law and to advise them on the facts, and (except on acquittal of a criminal charge) to set aside their verdict if in his opinion it is against the law or the evidence." The essential elements of a trial by jury at common law were re-stated by the Supreme Court in the recent case of *Patton* v. *United States,* 281 U. S. 276, at pages 288 and 290, as follows: "We first inquire what is embraced by the phrase 'trial by jury.' That it means a trial by jury as understood and applied at common law, and includes all the essential elements as they were recognized in this country and England when the constitution was adopted, is not open to question. Those elements were (1) that the jury should consist of twelve men, neither more nor less; (2) that the trial should be in the presence and under the superintendence of a judge having power to instruct them as to the law and advise them in respect of the facts; and (3) that the verdict should be unanimous. * * * These common law elements are embedded in the constitutional provisions above quoted, and are beyond the authority of the legislative department to destroy or abridge." A jury trial in which the judge is deprived of the right to comment

on the evidence and to express his opinion on the facts, subject to the limitation stated, is not the jury trial which we inherited. James Bradley Thayer, in his Preliminary Treatise on Evidence at the Common Law, page 188, note, observed: "It is not too much to say of any period, in all English history, that it is impossible to conceive of trial by jury as existing there in a form which would withhold from the jury the assistance of the court in dealing with the facts. Trial by jury, in such a form as that, is not trial by jury in any historic sense of the words. It is not the venerated institution which attracted the praise of Blackstone and of our ancestors, but something novel, modern, and much less to be respected."

To show that the right of the trial judge to comment on the evidence and advise the jury as to the facts is not an essential element of trial by jury at common law certain cases are cited in the opinion of the majority. An examination of these cases is necessary to determine whether they support the doctrine announced in the opinion.

The first case is *People* v. *Powell,* 87 Cal. 348. There the question under consideration was the validity of a statute authorizing a change of venue in a criminal case, on the application of the district attorney and without the consent of the defendant. This statute was attacked on the ground that no such transfer was permissible at common law, and that the statute therefore offended against section 7 of the bill of rights of the California constitution which provides "The right of trial by jury shall be secured to all and remain inviolate." The court found that the common law right of trial by jury required a trial by a jury from the vicinage of the place where the crime was alleged to have been committed, and accordingly held the act unconstitutional.

*State* v. *Withrow,* 133 Mo. 500, was an original proceeding in the Supreme Court of Missouri for a writ of prohibition against one of the judges of the circuit court

of the city of St. Louis. An application for a special jury had been made to the respondent and he had granted the application in accordance with a rule of court which violated the governing statute. The writ of prohibition was awarded, and the court, in its opinion, said: "Our legislature, by adopting as it did, the term 'special jury' must be presumed to have done so, with a full understanding of the meaning, force and effect which that expression had acquired during its long sojourn at common law. And section 28 of our bill of rights declares that 'the right of trial by jury, as heretofore enjoyed, shall remain inviolate,' which means that all the substantial incidents and consequences which pertained to the right of trial by jury are beyond the reach of hostile legislation, and are preserved in their ancient substantial extent as existing at common law."

In *Walker* v. *N. M. & S. P. R. R. Co.* 165 U. S. 593, it was contended that a statute of the Territory of New Mexico which provided that special findings of fact by the jury might be asked and judgment rendered on such findings if they proved inconsistent with the general verdict, violated the right of trial by jury. It was held that the Federal territorial court, in which the cause was tried, was a court of the United States and that by virtue of the seventh amendment all the rights of trial by jury as they existed at common law were preserved. The statute was sustained because the seventh amendment did not attempt to determine in what way issues should be framed by which questions of fact might be submitted to a jury. The court, speaking by Mr. Justice Brewer, at page 597, observed: * * * "the putting of special interrogatories to a jury and asking for specific responses thereto in addition to a general verdict is not a thing unknown to the common law and has been recognized independently of any statute."

*Smith* v. *Western Pacific Railway Co.* 203 N. Y. 499, was an action for the recovery of money claimed to be

owing on a contract for services. The respondent pleaded the general issue and the statutes of limitations of the States of New York and California. Pursuant to a provision of the New York Code of Civil Procedure, the court ordered a separate and preliminary trial of the issue arising upon the latter defenses. The objection was raised that the provision of the code, when applied to actions in which a trial by jury might be demanded, was invalid, because it violated section 2 of article 1 of the State constitution which guaranteed the right of trial by jury according to the course of the common law. The court declared, upon the authority of cases in New York and other jurisdictions that the obvious right of a trial court to try separate issues separately did not deprive the litigant of an essential of the common law right of trial by jury.

In *Haines* v. *Levin,* 51 Pa. 412, the validity of a statute was challenged on the ground that it was a substantial denial of the right of trial by jury. The act provided for the trial of a landlord's suit for possession by a single justice of the peace, for the right of appeal to the court of common pleas within ten days upon giving security for costs and the rent to accrue to the time of final judgment, and for a jury trial on the appeal. There was no change in, but a mere postponement of, a jury trial until a later stage of the litigation, and the new act was sustained.

The case of *People* v. *Peete,* 202 Pac. (Cal.) 51, presented the question whether a statute which provided for the swearing of an alternate juror to take the place of a juror who might die or become incapacitated by illness, was obnoxious to the provision of the constitution of California that "The right of trial by jury shall be secured to all and remain inviolate." The court held that twelve jurors, neither more nor less, would see and hear the witnesses, receive the court's instructions, determine the issue of fact and render the verdict; and the question was answered in the negative.

The plaintiff in error in *Norton* v. *McLeary,* 8 Ohio St. 205, charged the invalidity of an act extending the jurisdiction of justices of the peace from $100 to $300 because the act failed to provide for trials by jury of the cases within the increased jurisdiction. The court upheld the act for the reason that, in every case tried before a justice of the peace within the extended jurisdiction, "an appeal lies from his judgment to the court of common pleas, so that either party may secure the full benefit of a trial by jury."

A statute provided that unless the party demanding a trial by jury paid the costs of the venire, his demand should be deemed waived. The defendant in *Humphrey* v. *Eakeley,* 72 N. J. L. 424, demanded that he be granted a trial by jury without being required to advance these costs. The demand was refused and he assailed the statute on the ground that it contravened the provision of the constitution of New Jersey that "the right of trial by jury shall remain inviolate." In *People* v. *Harding,* 53 Mich. 48, the validity of a statute creating a board of jury commissioners was sustained. Likewise, in *People* v. *Dunn,* 157 N. Y. 528, an act providing for a special jury in criminal cases in each county of the State having a certain population and prescribing the mode of selecting such special juries was upheld. Again, in *Lommen* v. *Minneapolis Gaslight Co.* 65 Minn. 196, an act to provide for struck juries was held valid. Of the questions involved in these four cases, none had reference to the conduct of a jury trial, but all concerned matters preceding such a trial.

Concerning the judge's participation in a trial by jury at common law, it is said in Hale's History of the Common Law of England, (4th ed. 1792,) at page 291: "Tenthly, another excellency of this trial is this: that the judge is always present at the time of the evidence given in it. Herein he is able in matters of law, emerging upon the evidence, to direct them; and also, in matters of fact, to give them great light and assistance, by his weighing the

evidence before them, and observing where the question and knot of the business lies; and by showing them his opinion even in matter of fact; which is a great advantage and light to laymen." Such a part in a jury trial cannot be held to be inconsequential, and none of the foregoing cases cited and relied upon in the opinion of the majority sustains the proposition that the silencing of the trial judge respecting the evidence is a mere change of detail and not the deprivation of an essential characteristic of a jury trial as known to the common law.

To fortify the opinion of the majority, the following statement by Prof. Austin W. Scott is quoted from his article on "Trial by Jury and the Reform of Civil Procedure," 31 Harvard L. R. 669, 671: "Only those incidents which are regarded as fundamental, as inherent in and of the essence of the system of trial by jury, are placed beyond the reach of the legislature. The question of the constitutionality of any particular modification of the law as to trial by jury resolves itself into a question of what requirements are fundamental and what are unessential, a question which is necessarily, in the last analysis, one of degree." To this general proposition, no exception can be taken, but Prof. Scott's view upon the question whether the taking from the jury of the judge's assistance by comment on the evidence and expression of opinion on the facts was a fundamental or an unessential change, also should have been quoted. He said in the same article, at pages 680 and 681: "At common law it was clearly proper for the judge not merely to state the law and to sum up the evidence, but also to express an opinion on the questions of fact in issue as long as he leaves to the jury the ultimate determination of the issue, and make it clear that it is not bound to adopt his opinion as its own. Since the judge had this power at common law, he is not deprived of it merely because the right to trial by jury is guaranteed by the constitution. But in many of the States this power has been expressly

taken away by constitutional or statutory provisions. It may well be questioned how far the legislature can constitutionally curtail in this way the power of the judge. Trial by jury, in such a form as that, is not trial by jury in any historic sense of the words."

Other reasons are assigned to support the opinion, and these reasons, in the order of their statement, are: First, that in successive decisions this court has not included the right of the judge to comment on the evidence and express an opinion on the facts as an essential element of the right of trial by jury guaranteed by the constitution; second, that constitutional provisions, statutory enactments and judicial decisions in a great majority of the States prohibiting comment on the evidence by the trial judge indicate that the framers of the constitution did not regard the judge's right to make such comment as free from legislative control; third, that this right was exercised at the judge's discretion, and since the defendant could not demand that the judge make such comment, it was not an essential ingredient of a jury trial at common law, and fourth, that section 72 of the Practice act originally enacted in 1827, was a contemporaneous construction of the provision of the constitution of 1818, "That the right of trial by jury shall remain inviolate." The answers to these positions are respectively: First, In none of the decisions to which reference is made was the validity of section 72 of the Practice act challenged and the question whether the judge's right to comment on the evidence and express his opinion on the facts was an essential element of trial by jury guaranteed by the constitution was not raised or determined; second, no constitutional provisions or statutory enactments of other States are noted in the opinion and the decisions of other jurisdictions that are cited were rendered long after the adoption of our first constitution in 1818, and could not indicate that the framers of that instrument intended to place the judge's right to comment on the evidence within legislative

control; third, the particular right or power vested in a judge by the common law and exercised at his discretion, exists apart from, and its exercise is not dependent upon, any action or non-action of a defendant, and fourth, section 72 of the Practice act was not a contemporaneous construction of a constitutional provision adopted nine years before the first enactment of the statute, but was an attempted legislative deprivation of a judicial power theretofore exercised by a judge in a trial by jury according to the course of the common law.

It is said in the opinion of the majority that: "No definition of the phrase 'under the direction and superintendence of a judge' has been found in any of the decisions. Suffice it to say that these words carry no enlarged or hidden power or meaning. 'Direction' refers primarily to the duties to be performed by the trial judge in guiding the jury by instructing them on matters of law, only, leaving to the jury the exclusive function of determining all matters of fact without any suggestion or comment by the judge. 'Superintendence' refers to the other general duties to be performed by the trial judge in conducting and controlling the trial in conformity with the established rules of court and according to the laws regulating its practice and procedure." The limitations imposed by this statement are unwarranted, and the statement itself ignores recognized authorities. In the Federal courts the right of trial by jury as it existed at common law is preserved, and the Supreme Court, in *United States* v. *Philadelphia and Reading Railroad Co.* 123 U. S. 113, 114, said: "Trial by jury in the courts of the United States is a trial presided over by a judge, with authority, not only to rule upon objections to evidence, and to instruct the jury upon the law, but also, when in his judgment the due administration of justice requires it, to aid the jury by explaining and commenting upon the testimony, and even giving them his opinion upon questions of fact, provided only he submits those questions to their de-

termination." Inherent in a trial by jury at common law, as stated in *Capital Traction Co.* v. *Hof*, 174 U. S. 1, 13, 14, "is a trial by a jury of twelve men in the presence and under the superintendence of a judge empowered to instruct them on the law and advise them on the facts." In the enumeration of the essential elements of such a trial, this statement was reiterated by the Supreme Court in *Patton* v. *United States*, 281 U. S. 276, 288. The right or power of the judge to aid the jury by commenting on the evidence and expressing his opinion on the facts, "when in his judgment the due administration of justice requires it," imposes a duty of such gravity that, as the Supreme Court said in *Nudd* v. *Burrows, Assignee*, 91 U. S. 426, at page 439, "There is none more important resting upon those who preside at jury trials." In view of these decisions, and others in various jurisdictions, there is neither precedent nor justification for the narrow scope to which the majority opinion would confine the directing and superintending power of the judge in a trial by jury according to the course of the common law. To deny the judge's right or power to assist the jury in the determination of issues of fact is to deprive him of one of his most important functions and inevitably effects a fundamental change in a trial by jury. How the right to such a trial, thus emasculated, can remain inviolate, is not discernible.

The attempt is made in the opinion of the majority to avoid the persuasive force of the decisions of the Supreme Court of the United States by the assertion that they "are not applicable because the trial by jury secured by the seventh amendment to the Federal constitution relates only to the courts of the United States." The right of trial by jury, which the seventh amendment provides shall be preserved, has always been construed to mean the right of trial by jury according to the course of the common law. The same right, the majority concedes, is guaranteed by the constitution of Illinois. When the Federal Supreme

Court was asked to determine the essential or fundamental elements of that right, recourse to the common law was necessary. The uniform decisions of the court upon that question constitute the highest authority, and the fact that the seventh amendment is not a limitation upon the powers of the States does not destroy or even impair their persuasive force in respect of the question decided.

Section 22 of article 4 of the State constitution which prohibits the passage of local or special laws to regulate the practice in courts of justice and section 29 of article 6 of the same constitution, which provides that "All laws relating to courts shall be general, and of uniform operation; and the organization, jurisdiction, powers, proceedings and practice of all courts, of the same class or grade, so far as regulated by law, and the force and effect of the process, judgments and decrees of such courts, severally, shall be uniform," are quoted in the opinion in support of the statement that the legislature may enact general laws governing judicial procedure. These constitutional provisions merely recognize the power of the legislature to enact such uniform laws concerning judicial practice and procedure as do not involve a breach of the third article of the constitution which provides that "the powers of the government of this State are divided into three distinct departments—the legislative, executive and judicial; and no person, or collection of persons, being one of these departments, shall exercise any power properly belonging to either of the others, except as hereinafter expressly directed or permitted," and of section 1 of article 6 which vests the judicial powers in a supreme court and certain subordinate courts.

Constitutional provisions should be construed to avoid conflict and to produce a result that is harmonious. The grant of judicial power to the department created for the purpose of exercising it is an exclusive grant and exhausts the whole and entire power. (*People* v. *Bruner,* 343 Ill. 146, 157; *People* v. *Fisher,* 340 id. 250; *People* v. *Smith,*

327 id. 11). The only exemptions from the prohibition against encroachments by one department of the government upon the powers of another, pertinent to this inquiry, are section 22 of article 4 and section 29 of article 6 of the constitution. The former confers no power unless it be by implication. The clause, so far as regulated by law, in section 29 of article 6, is one of limitation. It recognizes that there are matters of practice, procedure and powers of courts that are not subject to legislative control. The incidental regulation of practice in the courts, however, may be inseparable from enactments of a substantive character. Statutes providing for the summoning and selection of persons for jury service or declaring the competency or incompetency of witnesses concern proceedings in the courts, but their procedural aspect is lost in the greater importance of the general interest sought to be served. These illustrations are sufficient to show that there are statutes, primarily substantive in character, yet affecting practice and procedure in the court, which the legislature has the power to enact. Statutes, the sole purpose of which is to control or regulate judicial power and procedure, on the contrary, are encroachments upon the judicial province and are prohibited by the third article of the constitution. If the enactment of a general law of uniform operation is the condition upon which the legislative power may be exercised with respect to practice and procedure in the courts, as the opinion of the majority seems to declare, section 1 of article 6 of the constitution has largely lost its meaning and article 3 of the same instrument may be violated with comparative impunity.

At common law the trial judge had the power to instruct the jury orally or in writing, as he might elect. That power was vested in the judicial department of this State by the first constitution and has abided in the same department continuously since. By section 73 of the Practice act, which requires all instructions to the jury to be reduced to writing, the legislature directs the manner in which a judge

shall exercise a power purely and exclusively judicial. The statute is therefore an encroachment upon the judicial department in violation of the constitution.

It is said that the statutes in question have been construed and applied during a considerable period. This fact does not necessarily render them immune from constitutional attack. Where the language of the constitution is not ambiguous it is not permissible to interpret it differently from its plain meaning, and a construction contrary to its terms, for any period of time, will be disregarded. *People* v. *Bruner,* 343 Ill. 146.

It may be added that the opinion assumes the trial judge invaded the province of the jury by commenting on the evidence. At common law, as has been observed, the judge was required to inform the jury that they were the sole judges of the facts and that they should disregard his expressions of opinion if they did not themselves reach the same conclusion. Upon this question the Supreme Court in *Nudd* v. *Burrows, Assignee,* 91 U. S. 426, at page 439 said: "They must distinctly understand that what is said as to the facts is only advisory, and in nowise intended to fetter the exercise finally of their own independent judgment." Instead of encroaching upon the jury's province, the trial judge tendered the jury his advice and assistance and at the same time confirmed and re-assured them of their entire independence and supremacy in the decision of all questions of fact.

For the foregoing reasons, I am convinced that section 72 of the Practice act violates section 5 of article 2 of the constitution; that both sections 72 and 73 of the Practice act are unwarranted encroachments upon the judicial department and that they are void. I therefore respectfully dissent from the opinion and judgment of the court.

Mr. JUSTICE DUNN concurs in the foregoing dissenting opinion.