(No. 20349.—)

THE PEOPLE *ex rel.* John A. Swanson, State's Attorney, Petitioner, *vs.* HARRY M. FISHER, Respondent.

*Opinion filed August 2, 1930.*

JOHN A. SWANSON, State's Attorney, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for petitioner.

MAX M. GROSSMAN, for respondent.

Mr. JUSTICE DEYOUNG delivered the opinion of the court:

Pursuant to leave granted, an original petition in the name of the People of the State on the relation of John A. Swanson, State's attorney of Cook county, for a writ of *mandamus* against Harry M. Fisher, judge of the circuit court of Cook county and *ex-officio* judge of the criminal court of the same county, was filed in this court. It is alleged in the petition that on March 13, 1930, an indictment was returned in the criminal court of Cook county charging Albert Weinberg with the crime of rape; that Weinberg was subsequently arraigned; that he pleaded not guilty, waived a jury trial and submitted the cause to the court; that the respondent, Judge Fisher, heard the testimony of witnesses, found the defendant not guilty and rendered judgment accordingly; that, upon the particular indictment, the respondent had neither authority to permit the waiver of a jury trial, nor jurisdiction to hear and determine the cause upon such a waiver, and that, the proceedings being void, the State's attorney thereafter made a motion to expunge both the order for the disposition of the cause without the intervention of a jury and the order discharging the defendant, but that the motion was denied. The prayer of the petition is for the issuance of a writ of *mandamus* commanding the respondent to expunge from the records of the criminal court the proceedings resulting in Weinberg's discharge. The respondent interposed a demurrer to the petition and upon these pleadings the cause is submitted.

The question presented is whether, upon an indictment charging a felony, when a plea of not guilty is entered, the

person accused may waive a trial by jury, and the court, upon such a waiver, without the intervention of a jury, may proceed to hear and determine the cause and pronounce judgment. Courts, both State and Federal, have expressed contrary opinions upon this question; and certain of our decisions, if followed, would require a negative answer. The question, however, is of such importance in the administration of the criminal law, that a further examination of the grounds upon which these decisions rest is justified.

Magna Charta provided that "No freeman shall be taken or imprisoned, or disseized, or outlawed, or banished, or any ways destroyed, nor will we pass upon him, nor will we send upon him, unless by the lawful judgment of his peers, or by the law of the land." Trial by jury in its present form did not come into existence until long after the year 1215, and the phrase "lawful judgment of his peers or by the law of the land" meant, in criminal cases, nothing more than a guaranty of the right to trial according to one of the then existing modes, namely, by battle, ordeal or compurgation. (Moschzisker on Trial by Jury,—2d ed.— sec. 371). The strict right of the accused was to prove his innocence by one of these ways. (1 Holdsworth's History of English Law,—3d ed.—p. 323). These methods of proof or forms of trial, however, were gradually superseded by the jury. But the primitive jury differed essentially in its constitution and functions from the jury of the present day. Holdsworth, in his History of English Law, (vol. 1, 3d ed. pp. 317-319), says: "The jury was a body of neighbours called in, either by express law, or by the consent of the parties, to decide disputed questions of fact. The decision upon questions of fact was left to them because they were already acquainted with them, or if not already so acquainted with them, because they might easily acquire the necessary knowledge. For this reason it has been said that the primitive jury were witnesses to rather than judges of the facts. * * * Their judicial capacity tended to

grow more and more predominant. Thus, although as late as 1346, the verdict of a majority was taken, it was finally settled in 1367, that their verdict must be unanimous. * * * Although it was not till the latter part of the seventeenth century that the jury lost their character as witnesses, their character of judges was already predominating in the fourteenth century."

The jury, as a temporary body, constituted for the purpose of determining disputed questions of fact was not, even when Blackstone wrote, the exclusive mode of trial. Trial by battle, though very rarely invoked, was still a part of the law of England in his day. (4 Commentaries, 346). Practically obsolete by the end of the thirteenth century, the case of *Ashford* v. *Thornton*, 1 B. & Ald. 405, decided in 1818, showed that trial by battle persisted as "the constitutional mode of trial" in appeals of murder. That ancient method of trial was not abolished for all purposes until 1819, by Statute 59 Geo. III, chap. 46. (1 Holdsworth's History of English Law,—3d ed.—p. 310; The Older Modes of Trial, James B. Thayer, 5 Harvard Law Review, pp. 69, 70).

The centuries which elapsed between the granting of King John's charter and the attainment of independence by the English colonies in America witnessed not only the practical extinction of the older modes of trial and the gradual transformation in the character of the jury from witnesses to judges of disputed questions of fact, but also the ultimate predominance of the latter form of trial. The history of that period, however, does not show that the jury, as finally developed, became an indispensable part of the tribunal vested with jurisdiction to hear and determine criminal cases, but rather that trial by jury was a privilege conferred upon the person accused. Blackstone, speaking of this mode of trial, in his Commentaries, book 3, p. 350, said: "And it was ever esteemed, in all countries, a privilege of the highest and most beneficial nature."

The question whether, upon an indictment charging a crime punishable by imprisonment in the penitentiary, and a plea of not guilty thereto, the defendant may waive a trial and verdict by a jury of twelve men was presented in *Patton* v. *United States*, 281 U. S. 276. The pertinent provisions of the Federal constitution are the following:

Article 3, section 2, sub-section 3: "The trial of all crimes, except in cases of impeachment, shall be by jury; and such trials shall be held in the State where the said crimes shall have been committed; but when not committed within any State, the trial shall be at such place or places as the Congress may by law have directed."

The sixth amendment: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense."

In the interpretation of these provisions, the Supreme Court of the United States, in *Patton* v. *United States, supra,* said, at pages 296, 297: "The record of English and colonial jurisprudence antedating the constitution will be searched in vain for evidence that trial by jury in criminal cases was regarded as a part of the structure of government, as distinguished from a right or privilege of the accused. On the contrary, it uniformly was regarded as a valuable privilege bestowed upon the person accused of crime for the purpose of safeguarding him against the oppressive power of the king and the arbitrary or partial judgment of the court. Thus Blackstone, who held trial by jury both in civil and criminal cases in such esteem that he called it 'the glory of the English law,' nevertheless looked upon it as a 'privilege,' albeit 'the most transcendent

privilege which any subject can enjoy.' Book 3, p. 379. And Judge Story, writing at a time when the adoption of the constitution was still in the memory of men then living, speaking of trial by jury in criminal cases said: 'When our more immediate ancestors removed to America, they brought this great *privilege* with them, as their birthright and inheritance, as a part of that admirable common law which had fenced round and interposed barriers on every side against the approaches of arbitrary power. It is now incorporated into all our State constitutions as a fundamental *right,* and the constitution of the United States would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed it in the most solemn terms.' (2 Story on the Constitution, sec. 1779). In the light of the foregoing it is reasonable to conclude that the framers of the constitution simply were intent upon preserving the right of trial by jury primarily for the protection of the accused. If not, and their intention went beyond this and included the purpose of establishing the jury for the trial of crimes as an integral and inseparable part of the court, instead of one of its instrumentalities, it is strange that nothing to that effect appears in contemporaneous literature or in any of the debates or innumerable discussions of the time. This is all the more remarkable when we recall the minute scrutiny to which every provision of the proposed constitution was subjected. The reasonable inference is that the concern of the framers of the constitution was to make clear that the right of trial by jury should remain inviolable, to which end no language was deemed too imperative. That this was the purpose of the third article is rendered highly probable by a consideration of the form of expression used in the sixth amendment." Accordingly, the Supreme Court held that the effect of the constitutional provisions in respect of trial by jury is not to establish a tribunal as a part of

the frame of government, but only to guarantee to the accused the right to such a trial; that the provision of article 3, section 2, of the constitution, relating to trial by jury, is not jurisdictional, but confers a right upon the accused which cannot be withheld from him but which he may forego at his election; that in the absence of a waiver of such a trial, expressly and intelligently made, the district court cannot proceed without a jury, not because a jury is necessary to its jurisdiction, but because the accused is entitled by the provisions of the constitution to that mode of trial, and that the power of the defendant to waive a jury trial may be exercised in cases of felonies as well as misdemeanors.

The provisions of the Federal constitution to which reference has been made obviously relate only to offenses against the Federal laws and are not limitations upon the powers of the States. (*Eilenbecker* v. *District Court of Plymouth County*, 134 U. S. 31; *Cook* v. *United States*, 138 id. 157). A consideration of the applicable provisions of the successive State constitutions is therefore necessary. Section 6 of article 8 of the constitution of 1818 and section 6 of article 13 of the constitution of 1848 provided that the right of trial by jury should remain inviolate. By section 5 of article 2 of the present constitution "the right of trial by jury as heretofore enjoyed shall remain inviolate." Section 9 of the same article provides that in all criminal prosecutions the accused shall have the right to a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. This right to a speedy public trial is incorporated in the same section with other constitutional rights of a person accused of crime, namely, to appear and defend in person and by counsel; to demand the nature and cause of the accusation; to meet the witnesses face to face and to have process to compel the attendance of witnesses in his behalf. Each of the two earlier constitutions contained similar pro-

visions. Const. 1818, art. 8, sec. 9; Const. 1848, art. 13, sec. 9.

It will be observed that the framers of our successive State constitutions, in each of the foregoing sections, spoke, not of trial by jury, but of the right of trial by jury. With respect to such a trial, the present constitution, like its predecessors, is not mandatory or peremptory in form, but confers merely a right or privilege. In *Bank of Columbia* v. *Okely,* 17 U. S. 235, the Supreme Court of the United States, speaking of the seventh amendment to the Federal constitution, said: "Had the terms been that 'the trial by jury shall be preserved,' it might have been contended that they were imperative, and could not be dispensed with. But the words are that 'the right of trial by jury shall be preserved,' which places it on the foot of a *lex pro se introducto,* and the benefit of it may therefore be relinquished." Where a constitution provides that the right of trial by jury and not that mode of trial itself, shall be preserved, the right may be waived. *Brewster* v. *People,* 183 Ill. 143.

The right of an accused person to a jury trial is absolute to the extent that he may have such a trial by claiming it or even by withholding his consent to proceed without it. The State owes to a person charged with crime a fair and impartial trial, including a strict compliance with every constitutional guaranty, but it is not obliged to force upon him the acceptance of rights and privileges in the face of his desire, informed and expressed, to waive them. The protective provisions of section 9 of article 2 of the constitution are not so imperative that an accused person shall be tried by a jury when he desires to plead guilty; or that his trial, in the event of a trial, shall be held void because he refused to be represented by counsel, or because he did not have compulsory process to compel the attendance of witnesses when he had waived that right, or because he did not have a speedy trial when he had petitioned the court

for delay. A plea of guilty, which is a waiver of any trial, at least so far as the question of guilt is concerned, is permissible even in capital cases, and a waiver of any trial necessarily includes the waiver of a jury trial. If a person accused of crime cannot waive a jury trial, then logically a plea of guilty should not be accepted and, in that event, there would be forced upon the accused as well as the State a jury trial to establish facts admitted by the confession of guilt. The purpose of the several safeguards enumerated in section 9 of the bill of rights is to protect the life and liberty of the person accused against arbitrary power, oppression and tyranny. These rights were given a constitutional order and dignity so that persons accused of crime might not be deprived of them by legislative encroachments. But to construe constitutional provisions that in terms merely guarantee to the accused the right to a trial by jury as absolutely prohibiting any other mode of trial, even with the consent of the accused, is without justification, either historical or legal.

The power of a defendant in a criminal case to waive rights guaranteed him by the constitution was expressly recognized early in the history of Illinois. In *People* v. *Scates,* 3 Scam. 351, it appeared that William Coberly had been indicted in St. Clair county for the crime of murder. He pleaded not guilty and at the same time made an application for a change of venue from that county and from the second judicial circuit. The State's attorney of that circuit consented that the venue be changed to Perry county in the third judicial circuit. When the defendant was placed at the bar for trial in that county the State's attorney of the latter circuit moved to dismiss the cause from the docket of the circuit court of Perry county for the want of jurisdiction. The motion was granted and the prisoner was remanded to the St. Clair county jail. An original petition for a writ of *mandamus* commanding the circuit court of Perry county to proceed with the trial of the cause was

sought. In awarding the writ this court said: "The constitution requires that an accused person shall have a speedy and impartial trial by a jury of the vicinage. This is for his benefit and protection and the clause was inserted in all our constitutions to prevent the hazards and injury to which accused persons were exposed by the action of the Crown during our colonial existence. * * * It is, then, a constitutional right which every man has to be tried by a jury of his neighborhood. * * * It is said that a prisoner in a capital case is standing upon all his rights and can waive none of them, nor his counsel for him, and reference is made to the case of *Normaque* v. *People,* Breese, 145, in support of this position. This case means nothing more than this, that a prisoner in a capital case is not to be presumed to waive any of his rights; but that he may, by his express consent, admit them all away, can be neither doubted nor denied. He may certainly plead guilty, and thus deprive himself of one of the most valuable rights secured to the citizen, that of a trial by jury. If he can expressly admit away the whole case then it follows that he can admit any part of it, but will not be presumed to have done so; the consent must be expressly shown and this is the whole scope of the doctrine in the case referred to." This rule was re-affirmed in *Chase* v. *People,* 40 Ill. 352, *Perteet* v. *People,* 70 id. 171, and *People* v. *Pilewski,* 295 id. 58, among other cases. In *Harris* v. *People,* 128 Ill. 585, however, it was held that in a prosecution for a felony, when the plea of not guilty is entered, the right to a jury trial cannot be waived by the accused so as to confer upon the court, without a jury, jurisdiction to try, convict and sentence the defendant. The premises from which this conclusion was drawn were first that at common law, the only recognized tribunal for the trial of an accused person upon an indictment charging a felony, to which a plea of not guilty had been interposed, was a jury, and second that by statute (Crim. Code, div. 13, sec. 8,) all trials for criminal offenses

shall be conducted according to the course of the common law, except when the act points out a different mode. The first proposition is not supported by the authorities cited, and since its unsoundness has been shown, the conclusion necessarily fails. Proceeding, the court observed: "But it is said that the right to a trial by a jury is a right which the defendant may waive. This may be admitted, since every plea of guilty is, in legal effect, a waiver of the right to a trial by the legally constituted tribunal. But while a defendant may waive his right to a jury trial, he cannot by such waiver confer jurisdiction to try him upon a tribunal which has no such jurisdiction by law. Jurisdiction of the subject matter must always be derived from the law and not from the consent of the parties, but in the present case, jurisdiction is sought to be based, not upon any law conferring it, but upon the defendant's consent and agreement to waive a jury and submit her cause to the court for trial."

If the jury is an essential part of the tribunal without which the court has no jurisdiction of the subject matter, it is not discernible how, upon a plea of guilty in a criminal case, a valid judgment can be rendered. Yet the power of the court, without a jury, upon such a plea, to find the defendant guilty and render judgment is unquestioned. A court's jurisdiction of the subject matter is not determined by the plea which a person charged with crime may interpose. Before he appeared at the bar of the tribunal, it either was or was not vested with jurisdiction of the subject matter of his cause. If the court possessed such jurisdiction, it was conferred by or pursuant to some provision of the constitution, and not by the act or consent of the defendant.

Section 1 of article 6 of the constitution declares that the judicial powers, except as otherwise provided in the article, shall be vested in one Supreme Court, circuit courts, county courts, justices of the peace, police magistrates, and in such courts as may be created by law in and for cities

and incorporated towns. The creation of appellate and probate courts is authorized by the 11th and 20th sections of the article respectively. The circuit and superior courts of Cook county are established by section 23 and the criminal court of the same county by section 26. The jurisdiction of the several courts is either definitely prescribed or committed to the legislature for determination. Section 29 provides that all laws relating to courts shall be general and of uniform operation and that the organization, jurisdiction, powers, proceedings and practice of all courts, of the same class or grade, so far as regulated by law, shall be uniform.

Article 6 of the constitution covers the whole judicial power of the people of the State and is the source of all legislative power respecting courts. (*People* v. *Smith,* 327 Ill. 11; *People* v. *Olson,* 245 id. 288; *Missouri River Telegraph Co.* v. *First Nat. Bank,* 74 id. 217). Section 12 provides that the circuit courts shall have original jurisdiction of all causes in law and equity and such appellate jurisdiction as is or may be provided by law, and by section 26 the criminal court of Cook county "shall have the jurisdiction of a circuit court in all cases of criminal and quasi-criminal nature, arising in the county of Cook, or that may be brought before said court pursuant to law." The circuit courts in counties other than Cook and the criminal court in that county derive their power and authority to hear and determine criminal cases from these sections of the constitution. The word jury does not appear in the sixth article of the constitution and that article does not make the jury a part of any court created or authorized by it.

A court is fully organized and competent for the transaction of business without the presence of a jury. (*Schick* v. *United States,* 195 U. S. 65; *Patton* v. *United States, supra*). The provisions of the bill of rights which guarantee to an accused person the right to a trial by jury refer only to the form and manner of the trial and are not

jurisdictional in character. Illustrative of the correctness of this conclusion is *Kelly* v. *People*, 115 Ill. 583, in which it appeared that the plaintiff in error was convicted of burglary upon an indictment which, to aggravate the punishment, contained a count setting forth a former conviction for robbery. He pleaded not guilty to the earlier indictment, waived a trial by jury, was found guilty by the court and sentenced to the penitentiary. Upon the review of the second conviction he contended that the earlier judgment was void because he could not, upon a plea of not guilty to a felony charge, waive a jury trial. In denying this contention, the court said, * * * "there was undoubted jurisdiction both of the subject matter and person. The court had power to proceed to hear and determine. The judgment was not such an one as the court had no power, under any circumstances or upon any state of facts, to pronounce in such a case, but it was one within the power of the jurisdiction which had attached. * * * If the judgment be wrong, it is because it was rendered upon the court's finding the guilt and fixing the punishment,—so that the correctness of the judgment depended upon the particular state of facts which was presented in the progress of the hearing and determination of a case of which the court had jurisdiction."

The case of *Harris* v. *People, supra,* was followed by *Morgan* v. *People,* 136 Ill. 161. In *Brewster* v. *People, supra,* however, it was held that, when authorized by statute the right of trial by jury upon an indictment for a misdemeanor may be waived by the person accused without violating sections 5 and 9 of article 2 of the constitution. Later in *Paulsen* v. *People,* 195 Ill. 507, it was decided that the cases of misdemeanors in which a trial by jury may be so waived are such only as may be prosecuted otherwise than by indictment, and that this power of waiver cannot be extended to such offenses as are punishable by fine and imprisonment in the penitentiary. The provisions .

of sections 5 and 9 of the bill of rights that the right of trial by jury as heretofore enjoyed shall remain inviolate and that in all criminal prosecutions the accused shall have the right to a speedy public trial by an impartial jury make no distinction between felonies and misdemeanors. Section 9 guarantees the right to a jury trial in all criminal prosecutions irrespective of class or grade. If the effect of these constitutional provisions is to make the jury an indispensable part of the circuit courts and of the criminal court of Cook county, so far as the exercise of their jurisdiction in criminal cases is concerned, then the jury, by constitutional mandate, is as essential in the trial of persons accused of misdemeanors as of felonies, and statutory authority to waive a jury trial in any criminal prosecution obviously can be of no avail. No such mandate, however, exists for the constitution in terms merely confers upon the accused the right to a jury trial in all criminal prosecutions, and there is nothing in the constitution, either express or implied, which prohibits the waiver of that right by the accused whether the offense charged be a felony or a misdemeanor.

Another ground relied upon for denying the power of a person accused of a felony to waive a trial by jury is that such a proceeding is against public policy, because the State, it is said, has an interest in the preservation of the lives and liberties of its citizens and it would be highly dangerous to permit such a practice. The theory has no substantial basis. Rules of law must struggle for existence in the strong air of practical life. (1 Holdsworth's History of English Law,—3d ed.—p. 349). There is no practical danger that accused persons will be so oblivious of the interest which the State has in their lives and liberties that they will voluntarily go to prison or suffer death ignominiously. Nor is the assertion that it would be highly dangerous to permit the waiver of jury trials in felony cases very convincing without a specification of the reasons supporting

the assertion. A plea of guilty to any indictment, whatever may be the grade of the offense, will be received and acted upon if it is made to appear that the nature and effect of the plea are understood by the person accused. In such a case, the preliminary investigation by the grand jury and the confession of guilt by the plea, if understandingly made, are deemed sufficient to safeguard the public interests. The answer to the contention that public policy denies the power of a defendant to waive a jury trial upon a felony charge made by the Supreme Court of the United States, in *Patton* v. *United States, supra,* is conclusive: "It is difficult to see why the fact, frequently suggested, that the accused may plead guilty and thus dispense with a trial altogether, does not effectively disclose the fallacy of the public policy contention; for if the State may interpose the claim of public interest between the accused and his desire to waive a jury trial, *a fortiori* it should be able to interpose a like claim between him and his determination to avoid any form of trial by admitting his guilt. If he be free to decide the question for himself in the latter case, notwithstanding the interest of society in the preservation of his life and liberty, why should he be denied the power to do so in the former? It is no answer to say that by pleading guilty there is nothing left for a jury to try, for that simply ignores the question, which is not what is the effect of the plea? the answer to which is fairly obvious, but, in view of the interest of the public in the life and liberty of the accused, can the plea be accepted and acted upon, or must the question of guilt be submitted to a jury at all events? Moreover, the suggestion is wholly beside the point, which is, that public policy is not so inconsistent as to permit the accused to dispense with *every* form of trial by a plea of guilty and yet forbid him to dispense with a *particular* form of trial by consent."

It is urged that at common law an accused person was not permitted to waive a right which was intended for his

protection and hence that he cannot waive a jury trial, particularly in a prosecution for a felony. The general application of the rule in England at a time when the person accused could not testify in his own behalf; when he was not allowed the assistance of counsel; when, if convicted, the punishment inflicted was out of all proportion to the gravity of the offense, and when a conviction for a felony worked corruption of blood or forfeiture of estate, may be conceded. A person accused of crime no longer suffers these restraints and disabilities, but, on the contrary, his rights are affirmed in the fundamental law; all penalties must be proportioned to the nature of the offense and the corruption of blood or forfeiture of estate upon a conviction for crime is prohibited. (Const. art. 2, secs. 5, 9, 11). The conditions in England which gave rise to the rule have no existence here. It is contrary to the spirit of the common law itself to apply a rule founded upon a particular reason, when that reason utterly fails—*cessante ratione legis, cessat ipsa lex.*

We conclude that the defendant in a criminal prosecution, whether the charge be a felony or a misdemeanor, has the power, upon a plea of not guilty, to waive a jury trial; and we do not adhere to what was said to the contrary in the cases of *Harris* v. *People, supra; Morgan* v. *People, supra; Brewster* v. *People, supra; Paulsen* v. *People, supra.* While the defendant has that power in every criminal case, yet he should exercise it with caution. The value of trial by jury has been established by long experience and the institution should be safeguarded. Upon the trial court is imposed the duty to see that an accused person's election to forego such a trial is not only expressly but also understandingly made. The performance of that duty involves a responsibility which cannot be perfunctorily discharged.

The prayer of the petition for a writ of *mandamus* is denied.

*Writ denied.*