(No. 20950.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK SCORNAVACHE, Plaintiff in Error.

*Opinion filed December 17, 1931—Rehearing denied Feb. 16, 1932.*

DEYOUNG, DUNN and DUNCAN, JJ., dissenting.

FRANK DEBARTOLO, and BENJAMIN C. BACHRACH, for plaintiff in error.

Oscar E. Carlstrom, Attorney General, John A. Swanson, State's Attorney, and J. J. Neiger, (John E. Northup, Edward E. Wilson, Grenville Beardsley, and George S. Lavin, of counsel,) for the People.

Mr. Chief Justice Stone delivered the opinion of the court:

Plaintiff in error was indicted in the criminal court of Cook county for the murder of one Santo Lacasto. The jury found him guilty of manslaughter. On the trial he in his own proper person and by his counsel waived a jury and moved the court that the cause be submitted and heard by the court without a jury. The State's attorney objected to this motion and moved that the cause be tried by a jury. The former motion was denied and the latter sustained. Motions for a new trial and in arrest of judgment were overruled. The only question in the case is whether the court erred in refusing to hear the cause without a jury.

Plaintiff in error contends that the right of trial by a jury, guaranteed by the constitution, is a right personal to the accused, and that upon plea of not guilty he has the right to waive a jury and also a right to require a trial by the court. The People argue that the constitutional provision for trial by jury in criminal cases, while a right of the accused, is also a right of the State, of which it may not be deprived without its consent. Section 9 of article 2 of our State constitution provides: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, to demand the nature and cause of the accusation and to have a copy thereof, to meet the witnesses face to face, and to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." Section 5 of article 2 of the constitution provides that "the right of trial by jury as heretofore enjoyed, shall re-

main inviolate; but the trial of civil cases before justices of the peace by a jury of less than twelve men may be authorized by law."

The question in this case has not previously been considered by this court. In *People* v. *Fisher*, 340 Ill. 250, *Patton* v. *United States*, 281 U. S. 276, (74 L. ed. 854,) *State* v. *Kaufman*, 51 Iowa, 578, *State* v. *Sackett*, 39 Minn. 69, 38 N. W. 73, and other cases, it was held that the right of trial by jury as guaranteed by the constitution is preserved as a right of the accused; but, as pointed out in the *Fisher* and *Patton cases*, a jury trial is not, and never has been, regarded a part of the structure of government and an integral and inseparable part of the court but rather as one of its instrumentalities the use of which may be waived. That question was settled for this State in the *Fisher case* and is not here. In that case the question here under consideration was not involved. In their brief the People have cited cases where there was agreement of both sides to waive a jury, but these do not bear upon the question whether the accused alone has power to dispense with a jury in a trial of the cause. The determination of the question raised here requires a review not only of the common law of England, from which our common law is largely taken, but a consideration of the background of our constitutional provisions.

It is argued that the accused, only, shall say whether a jury shall be waived and the cause tried by the court. It is pointed out that jury trial, at the time of its origin, was not a privilege of the accused but was in effect forced upon him, and that for the purpose of preventing such a situation, as well as to give him a jury trial if he wishes it, it was intended by the framers of our government that the right of trial by jury should mean the right to say whether the accused should be tried by a jury or by the court. The reason for the unpopularity of jury trial under the ancient common law of England is quite apparent

on consideration of the early history of the development of the jury. Trial by jury did not come into existence until the period between the eleventh and thirteenth centuries. The accused previously had the old defenses of compurgation or ordeal, and, in certain classes of cases, of battle, and, though these defenses had become obsolete, he was not required to defend by putting himself upon the country without his consent, doubtless due to the English regard for the then obsolete defenses under the common law.

In 1219 by an order of the council of the Roman church the clergy were prohibited to participate in judgment by fire and water, and by the statute 3 Edward I (chap. 12) the last vestige of trial by ordeal was discarded. At about the time of the birth of the jury there grew up the practice of presenting an accusation by a body which later developed into the grand jury as it is known in the later common law. This body consisted of twelve superior thanes or freeholders, who presented against the individual a charge, or accusation by public fame as it was called, or on suspicion. Owing to the obsolescence of the old methods of trial referred to, no method was available for the trial of the charge thus presented except a trial by the country, and unless the prisoner chose to be so tried such trial could not be had. Petit juries in criminal cases corresponded to the *jurata* in civil cases, and in the latter the consent of the parties to the mode of trial was necessary. It was at that time considered an injustice to try a man by jury if he did not consent, presumably because it was considered that mere human testimony was not enough, particularly when a man is being tried for his life. (Carter's History of Legal Institutions,—4th ed.—chap. 22.) The history of the constitution of the jury to try the charge is not entirely clear. Stephen, in his History of the Criminal Law, (chap. 1, p. 258,) states that the jury who presented the charge likewise heard the trial, and if they returned a verdict of guilty, like juries from four adjoining townships

were summoned and presented the same question, and if they supported the verdict of the presenting jury sentence was passed. Maitland likewise questions the existence of the practice of trial by another jury. He states the original practice to have been the presentation of a charge by a jury of twelve hundredors, who presented the charge or reputation of crime against the individual and tried the cause, and, if a verdict of guilty was returned, like representatives of the four townships nearest to the scene were called in, and on their agreement with the hundredors, which usually occurred in support of the charge, the defamed man was put on ordeal. He states that while it would seem unfair that a man should be put on trial by those who had already made a presentment against him, such was not exactly what the jurors did, they not having sworn that he was guilty but rather that he was suspected, not by them but by others. (2 Pollock & Maitland's History of English Law, p. 648.) Though some historians state that at least in parts of England the charge was presented by one jury and tried by another, yet all such trials were before those who knew the facts, either personally or by rumor. Witnesses were not called. Later the practice was adopted of leaving the calling of witnesses to the discretion of the jury. The accused had no right to call them. Witnesses were usually those entitled to try the cause, and the individual against whom a presentment on suspicion or fame had been made, when asked whether he would be tried "by God and my country," quite naturally replied that he would not, for the reason that his jurors already believed him guilty.

Another reason for the unpopularity of the jury trials provided by the early common law is found in the fact that by refusing to plead to a felony and thus go to the country there could be no conviction working attainder and forfeiture of the property of the accused, and since the king, at whose suit the alleged criminal was prosecuted, could scarcely expect to profit unless there was forfeiture of

property, the practice grew up of compelling the accused to state that he would place himself on the country. To bring this about the extraordinary and cruel procedure known as *peine forte et dure* became common. By this practice the accused was stretched on his back, naked, and weights placed upon him until he either consented to place himself on the country or died from the treatment. (Carter's History of English Institutions, chap. 22; 2 Pollock & Maitland's History of English Law, p. 650.) Moreover, if convicted by the jury there was no appeal, though in instances new trials were granted if no conviction was had, and if the jury failed to convict they were not infrequently imprisoned. (1 Holdsworth's History of English Law, p. 326.) In *Throckmorton's case,* 1 State Tr. 869, tried in 1554, the prisoner was acquitted and as a result the jury were fined and imprisoned. In *Bushell's case,* Vaughan, 135, tried in 1670, the court of common pleas discharged on *habeas corpus* the jury, who, in spite of brutal treatment by the court, persisted in the acquittal of the Quakers Penn and Mead and were fined and imprisoned by the court as a result of their verdict. The opinion discharging the jurors from their imprisonment effectually stopped the practice of punishing jurors for verdicts of acquittal, but this was not brought about until the latter part of the 17th century. It was later that the right to challenge the jury and to give sworn testimony came into existence to change trial by jury from a proceeding to be shunned by the accused into one which Blackstone characterized, in its later development, as "the glory of the English law." (3 Blackstone, p. 379.) This was five hundred years after origin of jury trials. It required centuries to discover what is now common practice: that a plea of not guilty might be entered and a trial by jury had where the accused refuses to plead but stands mute.

It is therefore clear that the reason for the unpopularity of jury trials as originally exercised did not obtain at the

time of the formation of our government. This early conception of jury trials had been long forgotten when this government was formed. Justice Story, in his work on the Constitution, (2 Story's Const. sec. 1779,) written during the generation following the adoption of that instrument, said of trial by jury: "When our immediate ancestors removed to America they brought this great privilege with them as their birthright and inheritance, as a part of that admirable common law which had fenced round and interposed barriers on every side against the approaches of arbitrary power. It is now incorporated into all our State constitutions as a fundamental right, and the constitution of the United States would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed it in most solemn terms." It is now established by the weight of authority in this country that the constitutional guaranty of jury trial is a right of the accused which may be waived. *People* v. *Fisher, supra,* and cases there cited.

It is evident from the history of the development of jurisprudence in the colonies prior to the Revolution, that the English law, by which the colonies were governed, did not in all cases guarantee trial by jury. It is likewise clear that the colonists, while claiming the common law of England as their birthright, sought to develop a common law of their own, based on customs and practices here. This is shown in the efforts of the Massachusetts colony to procure a jury trial in all cases. What there occurred was more or less characteristic of the experiences of those times in other colonies. By its Body of Liberties, adopted in 1641 by the Massachusetts colony, (Massachusetts Historical Society Collection, (3d series,) vol. 8; *Commonwealth* v. *Knowlton, 2* Mass. 534;) the attempt was made to create a common law based on the customs and practices of the colony, in which trial by jury was to be a central pillar. Hilkey, in his Legal Development in Colonial Mas-

sachusetts, pages 89 and 90, states: "According to liberty 29, the accused when brought to trial could request a jury unless the law provided otherwise." These attempts at securing jury trial were largely frustrated by the Privy Council in England by refusing to allow the pronouncements of the colony to stand as the law.

In 1692, after bitter experience by the colonists under Governor Andros, the General Court of the Massachusetts colony adopted a "Bill of Rights" providing, as was provided in the Magna Charta, that no freeman should be taken and imprisoned or disseized of his freehold or otherwise punished "but by the lawful judgment of his peers or the law of this province." This bill of rights also provided: "All trials shall be by the verdict of twelve men, peers or equals of the neighborhood." These provisions of the bill of rights were disallowed by the Privy Council of England, (1 Province Laws, pp. 40, 107$n$,) as were other acts of like nature adopted by the General Court. The reason for this veto is disclosed in a note attached to the proceedings of the Privy Council, (1 Province Laws, 1698-99, p. 287,) in which it is stated that the provision in the Colonial act for establishing courts, providing that all issues of fact shall be passed upon by a jury of twelve men, was contrary to the intention of the act of parliament requiring that all breaches of the Acts of Trade may be tried in the court of admiralty, where causes were to be tried without a jury.

This history is interesting as disclosing the contest over the enforcement of the Acts of Trade, which continued until the Revolution and was reflected in the Declaration of Independence. It was a struggle for the right to a jury trial, and it is evident that no one then had in mind the right of the accused to waive a jury, to say nothing of a right, as here claimed, to alone dictate that the cause shall be tried by the court. Immediately before the Revolution the Stamp act, so odious to the colonists, was amended to give jurisdiction of all cases arising under that act to the ad-

miralty courts, where the cases would be heard without jury trial. Other revenue laws were also amended so as to confer jurisdiction to try all cases arising under such acts on the admiralty courts. Vice-admiralty courts were created in Halifax, Boston, Philadelphia and Charleston, thus extending their number and increasing the convenience of trial in such courts, until it seemed to many of the colonists as if these courts without jury would extend their power from the seaports into the "body of the country." The colonists raised the alarm that Britain was depriving her colonies of the right of trial by jury and intended to more and more cut off such trial. (1 Fisher's Struggle for American Independence, pp. 64, 65.) This complaint is enumerated in the Declaration of Independence as one of the reasons for separating from the mother country. These facts are important as showing the historical background of our Federal constitution.

In John Adams' Works (vol. 4, p. 122,) the author expressed a prevailing thought of the colonists concerning the applicability of the common law of England to the colonies by saying: "Our ancestors were entitled to the common law of England when they immigrated—that is, to so much of it as they pleased to adopt." This sentiment, as well as the hatred of the admiralty courts for their refusal of a jury trial, was shared by other colonies under British rule. This interesting history of the struggles of the colonists for the right of jury trial naturally found response in the Federal constitution. But there was then no thought that such a right might not be waived. The background of those provisions of the constitution was the belief that the right of trial by a jury was essential to free government. Nowhere are we advised that the struggle was for the right to a jury trial if the accused wanted it and a trial by court if the accused so chose. In other words, there was no thought of a right of the accused to dictate the character of trial. The only thing sought was the right of jury trial.

So unmixed was this blessing thought to be that nothing was thought of or done about a trial by the court. There is therefore no historical background indicating that the inviolate right of jury trial preserved in the constitution was thought to include a trial that was not a jury trial at all but a trial by the court.

In *Bank of Colby* v. *Okely*, 4 Wheat. 235, the United States Supreme Court, in passing on the validity of a statute of Maryland providing, in effect, for judgment and execution on a promissory note in which the maker had waived trial and consented to execution, on application made to a court of competent jurisdiction by the holder of the note, (resembling somewhat our present proceeding on *narr* and *cognovit*,) pointed out that the thing which was preserved by the United States constitution, and by the language of the Magna Charta incorporated in the Maryland constitution, was the right of jury trial. The court there said: "As to the words from the Magna Charta incorporated into the constitution of Maryland, after volumes spoken and written with a view to their exposition, the good sense of mankind has at length settled down to this: that they were intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principles of private rights and distributive justice. With this explanation there is nothing left to this individual to complain of. What he has lost he has voluntarily relinquished, and the trial by jury is open to him either to arrest the progress of the law in the first instance or to obtain redress for oppression if the power of the bank has been abused." While the court was there considering a civil proceeding it dealt directly with the purpose of the constitutional guaranty, which, it may be observed, is by article 7 of the Federal constitution applicable in civil proceedings involving over $20, as it is in criminal cases. So in *Kearney* v. *Case*, 12 Wall. 275, (20 L. ed. 395,) it was stated: "Undoubtedly, both the

Judiciary act and the amendment to the constitution secured the right to either party in a suit at common law to a trial by jury. * * * Numerous decisions, however, had settled that this right to a jury trial might be waived by the parties and that the judgment of the court in such case should be valid." That case arose on consideration of the Judiciary act, passed shortly after the government was organized. Trial by the court seems in these cases to have been considered as based on the agreements of the parties. No case appears in the books holding that in the absence of a statute so providing, the accused in a criminal case has a right, without the consent of the prosecution, to determine that the case shall not be tried by jury.

A review of the statutes of the country discloses that in some of the States, as Indiana, (Burns' Ann. Stat. 1926, sec. 2299,) and Washington, (Remmington's Comp. Stat. 1922, sec. 2144,) it is provided that the consent of the prosecution and of the court is necessary to constitute a valid jury waiver in a criminal case. In others, such as New Jersey, (2 Comp. Stat. p. 1824,) such waiver is discretionary with the court. In Connecticut (Public act of 1921, chap. 267, sec. 2,) a waiver by the accused alone makes it imperative that the court try the cause. The Connecticut statute as re-enacted in 1921 provided as follows: "In all criminal cases, prosecutions and proceedings the party accused may, if he shall so elect, when called upon to plead, be tried by the court instead of by the jury." In *State* v. *Worden,* 46 Conn. 349, an act of 1874 substantially the same as that above quoted was held valid. In Maryland (*League* v. *State,* 36 Md. 25,) and Wisconsin (Laws of 1925, chap. 124,) only the consent of the accused is required.

In *Patton* v. *United States,* 281 U. S. 276, (74 L. ed. 854,) the court, after a review of the cases dealing with not only the waiver of a jury in criminal cases but consent to a trial by a jury of less than twelve in such cases, held that the defendant in a criminal case has the right to waive

a trial by a constitutional jury and on consent of the government and the court to submit to a trial of less than twelve persons or by the court.

In the *Fisher case,* which was a petition for *mandamus,* the petition disclosed that the criminal case there involved was tried by the court by an agreement between the State's attorney and the accused and his counsel and the cause submitted to the court for trial without a jury. No question was raised as to the right of the State's attorney to object to a trial by the court or the court to refuse to try the cause without a jury. There was likewise an agreement of the government and the accused in the *Patton case.* The argument in these and other cases was on the point that the accused could not consent to such waiver, and the decisions were necessarily confined to that question.

The argument is made that to require the consent of the prosecution to the waiver of a jury is to rob the accused of the privilege of waiver. It is a sufficient answer to this argument to say that the thing guaranteed to him is not the right to waive a jury trial but the right to have such a trial. The fact that he may consent to waive the right so preserved to him does not give him the right to say that the prosecution shall be bound thereby. In *City of Grand Rapids* v. *Bateman,* 53 N. W. (Mich.) 6, the prosecution was for a misdemeanor and the court tried the cause by a jury notwithstanding the defendant sought to waive a jury trial. The court there said: "The constitution (art. 6, sec. 28,) provides that in every criminal prosecution the accused shall have the right to a speedy and public trial by an impartial jury, and while it has been held that this right may be waived by the accused if he sees fit, (*Ward* v. *People,* 30 Mich. 116,) there is no constitutional or statutory right of the accused which requires the court to dispense with the aid of a jury on the trial of questions of fact." In *Ickes* v. *State,* 59 N. E. (Ohio) 233, the accused waived the right of trial by jury and moved to be tried by the court.

The motion was overruled and the case tried before a jury. In that State the statute provides that the accused may on his request be tried by the court. The court decided that the statute simply conferred jurisdiction on the court to try the accused and did not make it compulsory that it do so, and that the statute was designed to prevent any question being made concerning the legality of the waiver of right of trial by jury. In *State* v. *Mead,* 4 Blackf. (Ind.) 309, 30 Am. Dec. 661, the indictment was for larceny. It was there held that in all criminal cases, except misdemeanors, the right of jury trial was made inviolate by section 1 of article 5 of the State constitution. It was there said: "The State is as much entitled to the benefit of this constitutional provision as any individual can be. Whenever the right is claimed by either party in a case like the one before us the court is. bound to grant it."

There is, in the absence of statute, no good reason for holding that a right to waive a jury trial means a right to deprive the prosecution of it. If by reason of the nature of the crime, or the publicity of it, or for any sufficient reason, it appears that the judge is, or the people of the county are, prejudiced against the accused he has a right to a change of venue. There is, of course, nothing in the constitution conferring the right of jury trial on the State, but such has for centuries been the established mode of trial in criminal cases. The maintenance of a jury as a fact-finding body occupies that place in government, as we know it in America, which, in the absence of a statuté so providing, requires that such trial be not set aside merely on the choice of the accused.

While it is true, as herein stated, that the right of jury trial is so conferred on the accused that it may not be taken from him without his consent, this is by no means saying that the State may not object to a trial before the court. A trial by the court is not, and never has been, within the protective provisions designed as a shield to the accused.

So long, therefore, as objection on the part of the prosecution does not attack the safeguard of trial by jury no constitutional right is jeopardized. Preservation of the instrumentalities of government is of sufficient interest to the people to give them a right to object to jury waiver. The protective provision of the constitution was not designed to enable the accused to say there shall be no jury trial, but, on the contrary, to enable him to say there shall be such a trial. The right to a jury trial is not the right to be tried without a jury. The waiver of the accused is, as the term indicates, a relinquishment of the right, and is, in effect, a declaration that he is willing that the court try the issue of fact. From what has been said it must be apparent that in the absence of constitutional or statutory inhibition the court has the power, and upon objection by the People it is its duty, to submit the issues of fact in a criminal case to a jury, notwithstanding a waiver of jury trial by the accused.

It has in some cases been argued that if a State can prevent a trial without a jury it can prevent a plea of guilty. This by no means follows. That the accused may admit the charge and the State cannot be heard to object to his admission has always been recognized. As was said in *Hallinger* v. *Davis*, 146 U. S. 314: "If a recorded confession of every material averment of an indictment puts the confessor upon the country, the institution of jury trial and the legal effect and nature of a plea of guilty have been very imperfectly understood, not only by the authors of the constitution and their successors down to the present time, but also by all the generations of men who have lived under the common law." The long recognition by courts everywhere that trial in a criminal case means a jury trial has clearly given to the people the right to object to a trial by the court on waiver of a jury trial by the accused. No case cited or which we can find holds a contrary view.

It is evident from a study of criminal jurisprudence, that safeguards more than sufficient to insure justice to him have been thrown around the defendant in criminal cases. If he may choose to dispense with a jury trial over the objection of the prosecution he may by the same token demand a jury of less than twelve over such objection. The cases all recognize that the common law and constitutional jury was, and is, a jury of twelve. None of the cases hold that the accused has a right to force a trial, in the absence of consent of the prosecution or court, by a jury of less than twelve, though this may be done by agreement.

We are of the opinion that the criminal court did not err in overruling the motion of plaintiff in error, in the absence of consent of the People, to try the cause without a jury. The judgment of that court is therefore affirmed.

*Judgment affirmed.*

Mr. JUSTICE DEYOUNG, dissenting:

The reasons assigned by the majority of the court for its conclusion that the prosecution in a criminal case may insist upon a trial by jury notwithstanding the fact that the defendant has deliberately and understandingly waived his constitutional right to such a trial are the following: (1) Trial by jury for centuries has been the established mode of trial in criminal cases; (2) the place in government occupied by the jury as a fact-finding body requires that, in the absence of statutory permission, there be no substitution, solely at the election of the person accused, of a trial by the court for a trial by jury, and (3) the recognition by courts everywhere for a considerable period that the trial of a criminal case means a trial by jury and the public interest in the preservation of the instrumentalities of government have given the State the right to object to a trial by the court upon the waiver of a jury trial by the person accused. It appears therefore that no attempt is made to

sustain the announced construction of the constitution by recourse to any of its provisions or even an implication arising therefrom. Indeed, it is conceded in the opinion that a jury trial is not an integral and inseparable part of the court, but rather an instrumentality, which may or may not be employed; that the constitution does not confer upon the State the right to a trial by jury in a criminal case; that the right to such a trial guaranteed by the constitution is preserved as a right of the person accused and that he may waive the right. These concessions, it seems to me, are fatal to the conclusion of the opinion.

Section 9 of the bill of rights of our State constitution provides: "In all criminal prosecutions the accused shall have the right to appear and defend in person and by counsel, to demand the nature and cause of the accusation and to have a copy thereof, to meet the witnesses face to face, and to have process to compel the attendance of witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed." A bill of rights operates as a limitation upon the powers of the government and secures from encroachment the ascertained and declared rights of the citizen. (*Hurtado* v. *California*, 110 U. S. 516). The specific guarantees enumerated in section 9 are not made to the State, but to the person accused of a criminal offense. The framers of the constitution were intent upon preserving these rights for the protection of the individual and they declared them in unequivocal language unhampered by any condition or requirement in the interest of the State.

It is not denied that an accused person may, without the consent of the State, waive his right to appear and defend by counsel, to have a copy of the accusation against him, to meet the prosecution's witnesses face to face, to have process to compel the attendance of witnesses in his behalf, and to have a speedy trial. All these rights are

enumerated in the same section of the constitution as the right to a trial by jury. If an accused person may waive, despite objection by the State, the other constitutional safeguards which section 9 of the bill of rights provides for his protection, there is no reason for placing his waiver of the right to a jury trial, in case of like objection, upon a different basis. The power of a person accused of a criminal offense to waive his right to a jury trial is conceded in the opinion. To declare, as the majority does, that the prosecution's consent is necessary to make such a waiver effective is inconsistent with the defendant's acknowledged power, enables the State to nullify his act and reduces his power to waive a jury trial to a shadow.

The requirement of the prosecution's consent to the defendant's waiver of a jury trial is sought to be justified in the opinion on the ground that the "thing guaranteed" to the defendant "is not the right to waive a jury trial but the right to have such a trial." Before there can be the power to waive a jury trial, the right to such a trial must exist. The framers of the constitution were concerned with the essential right out of which the power to waive would arise. They took cognizance of the existence of an accused person's right to a jury trial and they safeguarded that right by giving it a constitutional order and dignity. The power to waive follows the existence of the right, and there is no necessity of guaranteeing the right to waive a jury trial. *People* v. *Fisher,* 340 Ill. 250.

It is said in the opinion that "There is, in the absence of statute, no good reason for holding that a right to waive a jury trial means a right to deprive the prosecution of it," and that * * * "in the absence of constitutional or statutory inhibition, the court has the power, and, upon objection by the People, it is its duty to submit the issues of fact in a criminal case to a jury notwithstanding a waiver of jury trial by the accused." These statements, it appears

to me, rest upon a misconception of the place occupied by the jury in the administration of the criminal law. The right of trial by jury is a privilege conferred upon the person accused, and the jury is not an indispensable part of the tribunal vested with jurisdiction to hear and determine criminal cases. (*Patton* v. *United States*, 281 U. S. 276; *People* v. *Fisher*, 340 Ill. 250). In the former case the Supreme Court of the United States said at pages 296, 297: "The record of English and colonial jurisprudence antedating the constitution will be searched in vain for evidence that trial by jury in criminal cases was regarded as a part of the structure of government, as distinguished from a right or privilege of the accused. On the contrary, it uniformly was regarded as a valuable privilege bestowed upon the person accused of crime for the purpose of safeguarding him against the oppressive power of the king and the arbitrary or partial judgment of the court."

The provision of the bill of rights which guarantees an accused person the right of trial by jury assures him such a trial by claiming it or even by withholding his consent to proceed without it. The provision is not, however, jurisdictional in character. The circuit court in counties other than Cook and the criminal court in that county derive their power to hear and determine criminal cases solely from sections 12 and 26 respectively of the 6th article of the constitution, and that article does not make the jury a constituent or essential part, necessary to the exercise of jurisdiction, of any court created or authorized by it. *People* v. *Fisher, supra.*

The constitution does not, as the majority in its opinion admits, confer upon the State the right to a trial by jury in a criminal case. The right to such a trial, as the Federal Supreme Court said in *Patton* v. *United States*, is "a valuable privilege bestowed upon the person accused of crime." Inherent in this privilege, constitutionally preserved for the

defendant and not the State, is the right to waive it. By his waiver of a jury, when understandingly made, he foregoes the participation in his trial of an instrumentality provided for his protection, and apart from any statute, the court, constitutionally created and vested with jurisdiction of the subject matter of the cause from its inception, will hear and determine it. The defendant's waiver of a jury trial cannot therefore "deprive the prosecution" of that which it never possessed; and the State's objection to the defendant's waiver cannot impose upon the court the "duty to submit the issues of fact in a criminal case to a jury notwithstanding a waiver of jury trial by the accused."

The opinion concludes with the statement that if a defendant "may choose to dispense with a jury trial over the objection of the prosecution he may by the same token demand a jury of less than twelve over such objection." The conclusion does not follow from the premise. One of the essential attributes of a jury at common law was that it should consist of twelve jurors. The right to a trial by such a jury, and not one of a greater or lesser number, is guaranteed the person accused of a criminal offense. Obviously, he may not demand a departure from or a violation of the constitution. If, however, a juror becomes incapacitated after a trial is entered upon and by agreement of the prosecution and defense enrolled of record, the trial proceeds to its conclusion with the remaining eleven jurors, as was true in *Patton* v. *United States,* 281 U. S. 276, no question of a demand contrary to the constitution and opposed by the prosecution is presented.

For the reasons stated I respectfully dissent from the opinion and judgment of the court.

Mr. JUSTICE DUNN and Mr. JUSTICE DUNCAN concur in the foregoing dissenting opinion.